PLANT FOOD CO-OP, Plaintiff,

v.

WOLFKILL FEED & FERTILIZER CORPORATION, Defendant, Third Party Plaintiff-Appellee,

v.

A. R. SMITH & CO., INC., Third Party Defendant-Appellee,

and

Pillsbury of Canada Ltd., Third Party Defendant-Appellant.

A. R. SMITH & CO., INC., Cross-Plaintiff-Appellee,

v.

PILLSBURY OF CANADA LTD., Cross-Defendant-Appellant.

Nos. 78-2481, 78-2482.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 1980.

Decided Oct. 30, 1980.

Rehearing Denied Dec. 10, 1980.

Richard F. Cebull, John J. Cavan, Billings, Mont., argued for Pillsbury of Canada; Sandall & Cavan, Billings, Mont., on brief.

F. D. Moulton, Moulton, Bellingham, Longo & Mather, Billings, Mont., argued for Plant Food Co–op; Brent R. Cromley, Billings, Mont., on brief.

Before SKOPIL and FARRIS, Circuit Judges, and THOMPSON,* District Judge.

SKOPIL, Circuit Judge:

## INTRODUCTION

This case involves the constitutional limits of the reach of Montana's long–arm jurisdiction. Appellant attacks the summary judgments entered against it as void for lack of personal jurisdiction. We find that appellant's purposeful contacts with Montana were sufficient to support the district court's exercise of personal jurisdiction. We affirm.

## FACTS

Plant Food Co–op (Plant Food) is a fertilizer dealer in Edgar, Montana. Plant Food ordered four rail car loads of ammonium nitrate fertilizer (called "34–0–0" in the industry) from Wolfkill Feed & Fertilizer Corp. (Wolfkill). Wolfkill is a Washington corporation.

Wolfkill ordered ordered the fertilizer from A. R. Smith and Co. (Smith), also a Washington corporation. Smith, in turn, purchased the fertilizer from Pillsbury of Canada Ltd. (Pillsbury). Pillsbury is located in Alberta, Canada. Pillsbury purchased the fertilizer from Love Feeds, Ltd. (Love), also located in Alberta.

The fertilizer was eventually shipped by means of a sight draft bill of lading. The bill of lading showed Pillsbury as shipper and Smith as consignee "c/o Food Co–op". The destination of the shipment was shown

*The Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

as Edgar, Montana. The contents of the cars was shown as "BULK 34–0–0 FERTILIZER."

Some of the fertilizer was received by Plant Food and unloaded into bins already containing ammonium nitrate fertilizer. A few days later Plant Food discovered that it had received ammonium sulfate and urea instead of ammonium nitrate. The ammonium nitrate already in Plant Food's bins was ruined and the bins were damaged.

## PROCEDURAL BACKGROUND

Attempts by Plant Food and Wolfkill to resolve the problem were unsuccessful. Plant Food brought an action against Wolfkill in the district court for the district of Montana. Jurisdiction was based on diversity of citizenship.

Plant Food alleged a breach of the express warranty of description and the implied warranty of merchantability. It alleged loss by contamination of its ammonium nitrate and other products plus incidental expenses as damages.

Wolfkill answered and filed a third party complaint against Smith and Pillsbury. Wolfkill alleged that if the allegations of Plant Food's complaint were correct, it was because Smith or Pillsbury had caused the wrong fertilizer to be delivered.

Pillsbury moved to dismiss and submitted the affidavit of its employee in charge of the fertilizer transaction. The affidavit showed that Pillsbury did not manufacture the fertilizer in question. Pillsbury's dealings were only with Love and Smith. Smith gave Pillsbury the shipping instructions after the order had been placed. Love actually shipped the fertilizer, although Pillsbury was shown as shipper on the bill of lading. Pillsbury never had physical custody or control over the fertilizer.

The district court denied Pillsbury's motion to dismiss. Pillsbury then answered and filed a third party complaint against Love. Smith answered and cross–claimed against Pillsbury. Love does not appear again in this action.

Plant Food obtained separate summary judgments against Wolfkill on the issues of liability and damages. Plant Food sought and was awarded as damages only the wholesale cost of the contaminated fertilizer and the cost of testing and storing the misdescribed fertilizer and the other contaminated products. Wolfkill did not appeal.

The district court granted Smith's motion for summary judgment against Wolfkill on Wolfkill's third party complaint. The court also granted summary judgment in favor of Wolfkill against Pillsbury, but denied Wolfkill's motion for judgment against Smith and/or Love. The district court denied Pillsbury's motion for a new trial.

Smith's motion for summary judgment against Pillsbury on its cross–complaint was then granted. These appeals followed.

There are two judgments appealed here. One is Wolfkill's judgment against Pillsbury based on Wolfkill's third–party complaint. The claim was in the nature of indemnity and judgment was for the amount of Plant Food's judgment against Wolfkill. The other is Smith's judgment against Pillsbury on Smith's cross–claim. The judgment is for the amount Smith paid Pillsbury for the bad fertilizer (but not Smith's lost profit).

## DISCUSSION

I. *Personal Jurisdiction*

Pillsbury's attack on the district court's exercise of personal jurisdiction is its only basis of appeal from Smith's judgment. The appeal from Wolfkill's judgment is based on both lack of personal jurisdiction and lack of privity.

■ In determining whether the district court has personal jurisdiction, two questions must be asked: first, whether the applicable statute potentially confers jurisdiction; second, whether assertion of such jurisdiction comports with due process. *H. Ray Baker, Inc. v. Associated Banking Corp.*, 592 F.2d 550 (9th Cir. 1979).

(a) Montana long–arm statute

Montana Rule of Civil Procedure 4B provides as follows:

"B. [JURISDICTION OF PERSONS].
(1) Subject to Jurisdiction. All persons found within the State of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:

(a) the transaction of any business within this state;

(b) the commission of any act which results in accrual within this state of a tort action;

(c) the ownership, use or possession of any property, or of any interest therein, situated within this state;

(d) contracting to insure any person, property or risk located within this state at the time of contracting;

(e) entering into a contract for services to be rendered or for materials to be furnished in this state by such person; or

(f) acting as director, manager, trustee, or other officer of any corporation organized under the laws of, or having its principal place of business within, this state, or as executor or administrator of any estate within this state."

■ Pillsbury contends that the only arguable basis for jurisdiction under the statute on the facts of the case is subsection (b), the commission of an act resulting in the accrual of a tort action in Montana. It appears that the district court relied on this basis of personal jurisdiction. Pillsbury argues that the facts show only a contract action, and not a tort action, arising out of its acts. Pillsbury also argues that it did not transact business within Montana so as to fall within subsection (a) of rule 4B.

The tortious nature of the conduct complained of here is somewhat obscured by the contract language of warranty used to describe the nature of the supplier's breach.

*See* W. Prosser, *The Law of Torts* 634–35 (4th ed. 1971); *Restatement (Second) of Torts* § 402B, comment d (1965).

The nature of Plant Food's damages, for which indemnity is sought, should make it clear that the underlying claim sounds in tort, at least as far as Wolfkill's action is concerned. Wolfkill sought indemnity for the property damage suffered by Plant Food.

■ Furthermore, Pillsbury does not address another potentially relevant subsection of rule 4B. Subsection (e) confers jurisdiction over any person as to any claim arising from the entering into a contract for services to be rendered or for materials to be furnished in the state by such person. Pillsbury contends that it entered into a contract for shipment of fertilizer to Smith in Washington. The bill of lading reveals, however, that Pillsbury contracted with Smith to deliver fertilizer to Plant Food in Montana. It is irrelevant that that portion of the agreement was entered into after Pillsbury initially accepted the order from Smith. We therefore conclude that Montana's long–arm statute potentially conferred personal jurisdiction over Pillsbury for both Wolfkill's and Smith's claims.

(b) Due process

■ Principles of due process limit the scope of a court's *in personam* jurisdiction. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The test is whether the defendant has sufficient contacts with the forum to make it fair or just to require the defendant to appear and defend the action in the forum state, and to give the forum court power over the defendant. *World–Wide Volkswagen, supra*, 444 U.S. at 291–92, 100 S.Ct. at 564.

■ If a non–resident defendant's activities in the forum are not so pervasive as to subject it to general personal jurisdiction, the court must evaluate the nature

and quality of defendant's contacts in relation to the cause of action. In this circuit three criteria are applied. First, the non–resident defendant must do some act or consummate some transaction within the forum or otherwise perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws. Second, the claim must be one arising out of or resulting from the defendant's forum–related activities. Third, the exercise of jurisdiction must be reasonable. *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247 (9th Cir. 1980); *Data Disc, Inc. v. Systems Technology Assoc.*, 557 F.2d 1280 (9th Cir. 1977); *L. D. Reeder Contractors of Arizona v. Higgins Industries*, 265 F.2d 768 (9th Cir. 1959).

■ The first two criteria are met in this case by Pillsbury's act of causing defective or mislabelled fertilizer to be shipped to Montana. That act is the source of both Wolfkill's and Smith's claims. The exercise of jurisdiction is also reasonable in light of the judicial efficiency involved and the need to assure consistent results in these interrelated actions. *See World–Wide Volkswagen, supra*, 444 U.S. at 292, 100 S.Ct. at 564.

The Supreme Court recently made it clear that the isolated sale of a product outside the forum state will not subject the manufacturer or seller to the personal jurisdiction of the courts of a state into which the product happens to travel and cause injury. *World–Wide Volkswagen, supra*. (Oklahoma courts had no personal jurisdiction over non–resident automobile retailer and its wholesale distributor when defendants' only connection with Oklahoma was the sale of a car in New York to New York residents who had an accident with the car in Oklahoma.)

Pillsbury contends that it contracted with Smith for sale of fertilizer to Smith in Washington. It argues that the fertilizer subsequently happened to travel to Montana, just as the car in *World–Wide Volkswagen* traveled to Oklahoma.

The facts that distinguish *World–Wide Volkswagen* from the case before us are Pillsbury's ability to control its contacts with the forum asserting jurisdiction and the benefits it derived from that contact.

■ The bill of lading shows conclusively that Pillsbury knew, at least when it accepted the shipping instructions, that the product it sold was destined for Montana. We recognize that foreseeability alone is never sufficient to establish personal jurisdiction. *World-Wide Volkswagen, supra*, 444 U.S. at 295–296, 100 S.Ct. at 566. Nevertheless, foreseeability does have some relevance in this determination.

"[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.*, at 297, 100 S.Ct. at 567.

■ If the sale of a product of a distributor is not an isolated occurrence, but arises from the efforts of the distributor to serve, directly or indirectly, the market for its products in other states, it is not unreasonable to subject it to suit in one of those states if its allegedly defective merchandise has there been the source of injury to its owner or others. *Id.*

"The forum State does not exceed its power under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.*, at 297–98, 100 S.Ct. at 567–568.

Pillsbury engaged in affirmative conduct to deliver its product into Montana. It was not brought into the forum by the unilateral act of another party. This contact with Montana was voluntary and financially beneficial to Pillsbury. When it knew the fertilizer was bound for Montana Pillsbury could have objected or made other arrangements if it found exposure to Montana's long–arm jurisdiction unacceptable.

*World–Wide Volkswagen, supra,* at 297, 100 S.Ct. at 567. *See* Louis, *The Grasp of Long Arm Jurisdiction Finally Exceeds Its Reach,* 58 N.Carolina L.Rev. 407, 426–27 (1980).

Due process was not violated by the district court's exercise of personal jurisdiction over Pillsbury.

II. *Privity*

■ While lack of jurisdiction was the only attack made on Smith's judgment, Wolfkill must pass another hurdle. Pillsbury contends that Wolfkill had no cause of action against it because there was no privity of contract between Wolfkill and Pillsbury. Privity is necessary in breach of warranty actions, according to Pillsbury.

Pillsbury correctly points out that the majority of jurisdictions do not allow the recovery of economic loss from a remote seller in a breach of contract action. *See* White & Summers, *Uniform Commercial Code* § 11–5 (1972). Nevertheless, this is not an economic loss case. Plant Food recovered from Wolfkill for property damage only. Wolfkill seeks indemnity from Pillsbury on Pillsbury's express warranty of description and implied warranty of merchantability.

Pillsbury argues that it cannot be required to indemnify Wolfkill because the record shows it committed no tortious acts. As we have noted above, a breach of warranty action may sound in tort. The record shows that Pillsbury sold to Smith and caused to be delivered to Plant Food, for Smith's account, ammonium sulfate and urea wrongly described as ammonium nitrate.

Pillsbury seems to contend that while there may have been a breach of contract for delivery of the wrong product, there was no tort because the product delivered was not defective. We reject this reasoning. `

The fertilizer delivered was defective ammonium nitrate even if it was perfectly good ammonium sulfate and urea. The delivered product had characteristics that ammonium nitrate does not have. These char-

acteristics caused property damage to Plant Food. It is for this damage that Plant Food recovered from Wolfkill and for which Wolfkill seeks indemnity.

This is unlike the situation in which no delivery is made at all and those in the chain of distribution seek reimbursement for the economic loss caused by the breach from those up the line. Even if privity is required in the latter situation, it is not here. *Cf. Whitaker v. Farmhand, Inc.,* 173 Mont. 345, 567 P.2d 916 (1977) (manufacturer liable for breach of implied warranties of fitness and merchantability without privity).

The judgments of the district court are AFFIRMED.