**Walter J. TAUBLER, Plaintiff-Appellant,**

v.

**Robert GIRAUD and Philippe Giraud, Defendants-Appellees.**

No. 79–3726.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 1981.

Decided Sept. 8, 1981.

Michael J. Dennis, Law Offices, Los Angeles, Cal., for plaintiff-appellant.

Brien F. McMahon, Johnsen, Manfredi & Thorpe, Los Angeles, Cal., for defendants-appellees.

Before CHAMBERS and CHOY, Circuit Judges, and CROCKER,* District Judge.

* The Honorable Myron D. Crocker, Senior United States District Judge for the Eastern District of California, sitting by designation.

CHOY, Circuit Judge:

Walter J. Taubler ("Taubler") brought suit against two French citizens for breach of contract and antitrust violations. The district court dismissed the action, finding that it had no *in personam* jurisdiction over the defendants. We reverse, finding that the defendants had sufficient contacts with the State of California to justify assertion of jurisdiction there for the purpose of this action.

## I. *Facts as Alleged*

The action below was dismissed under Rule 12(b)(2) of the Federal Rules of Civil Procedure. Accordingly, we presume true the facts as alleged by Taubler.[1]

Taubler met the Girauds while he was a salesman for Bass-Charrington Vintners, Ltd., a California wine distributor. Philippe and Robert Giraud are the father-and-son owners and operators of a winery and wine distribution business in France. Philippe Giraud came to California in 1972 to promote the Girauds' wine. Taubler and Philippe traveled to several California locations, visiting wine retailers and distributors. In 1973, Taubler met the Girauds at a French wine promotional event in New York and traveled with them to California. During this time, Taubler developed a personal and working relationship with the Girauds. Taubler entertained Philippe and introduced him to California wine merchants. Taubler and Philippe exchanged letters and Christmas greetings after the California visits.

In 1974, Taubler quit his job as a wine salesman for Bass-Charrington and contacted the Girauds asking to purchase their wines under a private label. Several letters were exchanged in which the Girauds indicated that rather than a private label, they would sell their wines to Taubler under the exisiting label after terminating their ex-

clusive contract with Bass-Charrington. In a telephone conversation Philippe assured Taubler that the wines would be sold to him. Taubler then flew to France for further negotiations. On October 29, 1974, Taubler and the Girauds signed a two-year agreement for sale of the wines. The prices and other details were added after continued correspondence and a meeting of the parties in New York. The Girauds paid Taubler's travel expenses for the New York meeting after changing their original plan to meet in California.

The parties engaged in extensive communications via telephone, telex, telegram and mail during the negotiation period. Taubler filed fair trade forms in California which were signed by Robert Giraud. The Girauds knew that this would allow them to benefit from the California laws regarding price posting and minimum prices. The Girauds also agreed to lower their prices and to give Taubler an exclusive distributorship in California. In August 1975, pursuant to the agreement, the Girauds shipped one order of wines to Taubler at San Francisco, FOB France, with payment due 60 days after arrival. Delivery in California was a prerequisite to payment. The payment was made from California in October. The Girauds also sent sample cases and labels to California, and paid customs penalties incurred in California.

Also in 1975, and unknown to Taubler, the Girauds contracted with Somerset Wine Company, Inc., a national wine distributor, to sell their wines to Somerset for over 25% less than Taubler's prices. In November of 1975, the Girauds refused to sell any more wine to Taubler. They referred a customer of Taubler's to Somerset and encouraged Somerset to begin servicing that and other California customers. The Girauds sent samples to Somerset, and took orders representing approximately $28,000 in revenue. They refused to make further sales to Tau-

---

1. *See Data Disc v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (where plaintiff is not allowed to prove disputed facts through discovery and evidentiary proceedings, it is necessary "only for [plaintiff's affidavits and written] materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss").

If further proceedings below reveal facts which would alter our preliminary finding of jurisdiction, the district court may take appropriate action at that point.

bler, and changed their California price-posting designee from Taubler to Somerset.

Taubler then instituted this action against the Girauds for breach of contract and antitrust violations. The complaint alleged a conspiracy between Somerset and the Girauds in violation of the Sherman Act, 15 U.S.C. §§ 1, 2; and discriminatory pricing in violation of the Robinson-Patman Act, 15 U.S.C. § 13(a). In another count, Taubler alleged state law antitrust violations. A related action was filed against Somerset for antitrust violations and interference with contract.

Taubler began discovery and brought a motion to compel after receiving only some of the documents he had requested. The Girauds brought a motion to dismiss for lack of personal jurisdiction, and Taubler moved for a stay or for a change of venue before a determination of the jurisdiction question. The district court granted the dismissal in an order from the bench stating that one shipment of wines, FOB France, was not sufficient to justify jurisdiction over the Girauds. Taubler's motions were never heard.

## II. *Discussion*

The issue in this case is whether personal jurisdiction exists over the Girauds under the facts as alleged, for the purpose of Taubler's breach of contract and antitrust claims.

■ This court has recognized a two-step test to determine whether *in personam* jurisdiction exists. First, we look to the applicability of the state long-arm statute, and second, we ask whether application of the statute is consistent with due process. *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir. 1980). The California long-arm statute provides for personal jurisdiction to the full extent allowed by the requirements of due process. *See* Cal.Code Civ.Proc. § 410.10. Thus in this case we proceed directly to the due-process analysis.

■ Due process requires that the defendant have sufficient minimum contacts with the forum state such that imposition

of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). A significant Supreme Court case decided last year has given new guidance for application of the *International Shoe* test. In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Court cut short any trend toward unlimited personal jurisdiction and emphasized that an isolated and unanticipated injury within the foreign state is not sufficient to support *in personam* jurisdiction. Both *World-Wide Volkswagen*, and *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980), a *quasi-in-rem* jurisdiction case decided the same term, note that the due process analysis focuses on the defendant, rather than the plaintiff. The question is whether under the totality of the circumstances the defendant could reasonably anticipate being called upon to present a defense in a distant forum. *World-Wide Volkswagen, supra* 444 U.S. at 297, 100 S.Ct. at 567.

Taubler does not argue that the Girauds' contacts with California are so significant as to justify general jurisdiction over them for all actions. Rather, Taubler argues that the Girauds' contacts with California, viewed in their totality, make it fair to assert jurisdiction over them for the limited purpose of the instant complaint.

This court has detected the presence of limited jurisdiction with a three-part test:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

*Data Disc, Inc. v. Systems Technology Assoc.*, 557 F.2d 1280, 1287 (9th Cir. 1977) (citations omitted).

The Girauds' possible contacts with California under the facts as alleged include their visits and promotional activity there prior to the contract; entering into a contract to sell wine for California distribution; letters, telexes, telegrams, and telephone calls to Taubler in California; flying Taubler from California to meet them in New York; shipping samples to California; paying customs penalties incurred there; designating Taubler, and later Somerset, as licensee for fair-trade benefits; shipping one order to California, FOB France; obtaining payment from California; conspiring with Somerset to displace Taubler in the California market; breaching the contract; and discriminatory pricing. Many of these contacts would be insignificant if viewed alone. Viewed in their totality, however, they indicate that the Girauds deliberately targeted the California market. They knew and intended that their wines would be sold there,[2] they actively promoted their product in California, and they were willing to breach the contract and violate antitrust laws in order to increase their business success there.

■ From these facts it is fair to say that the Girauds have engaged in purposeful activity in California. The breach of contract and antitrust claims arise out of that activity, which can be generally described as selling wine for California distribution. The final question is whether exercise of jurisdiction is reasonable. We find that it is.

In *Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266 (9th Cir. 1981), this court listed seven factors which were relevant to measuring the reasonableness of jurisdiction in that case:

(A) The extent of the purposeful interjection into the forum state.

(B) The burden on the defendant of defending in the forum.

(C) The extent of conflict with the sovereignty of defendant's state.

(D) The forum state's interest in adjudicating the dispute.

(E) The most efficient judicial resolution of the controversy.

(F) The importance of the forum to plaintiff's interest in convenient and effective relief.

(G) The existence of an alternative forum.

*Id.*, at 1270 (citations omitted.)

Some of these factors are also relevant here. First, and most significant, is the degree of purposeful interjection into California. The Girauds complain that it is unreasonable to impose jurisdiction on a foreign winemaker who has no office in California, and who sent only one shipment of wine there, FOB France. The wine, the Girauds argue, should not be their agent for service of process. In this case, however, the wine that was not shipped is as significant as the wine that was. The Girauds gave Taubler an exclusive distributorship in California and subsequently refused to sell wine to him, in conspiracy with Somerset. The foreseeable effect of this refusal was to cause injury to Taubler in California regardless of any metaphysical locus of the breach or conspiracy. The *World-Wide Volkswagen* case cautions against using the fortuitous arrival of a product in a given state as the basis for jurisdiction. 444 U.S. at 295–97, 100 S.Ct. at 566–67. In this case the Girauds knew that their wine was going to California, and they knew that their actions would cause injury there.

Similarly, in *Plant Food Co-op v. Wolfkill Feed and Fertilizer Corp.*, 633 F.2d 155 (9th Cir. 1980), we held that jurisdiction was properly imposed upon a seller who shipped defective fertilizer, through a distribution chain, to the forum state. The fertilizer's

---

**2.** The record contains, for instance: a December 1975 letter thanking one of Taubler's former customers for "the efforts which you have made in rebuilding our brand in California ...."; the Girauds' invoices indicating California destinations for wine shipped pursuant to the alleged conspiracy; a 1975 letter stating that Taubler will remain sole importer for California despite Somerset's request to distribute there; a November 1975 letter cancelling the contract and indicating that Taubler's territory had been restricted to California because of his poor record in selling the Girauds' wine.

chemical content damaged storage bins there. This court upheld a finding of jurisdiction over the seller, even though the seller had no contacts with the forum state other than the sale through an indirect distribution chain. The court focused on the defendant's knowledge and intent that the product would arrive in the forum state, stating that:

> The facts that distinguish *World-Wide Volkswagen* from the case before us are Pillsbury's ability to control its contacts with the forum asserting jurisdiction and the benefits it derived from that contact.

*Id.* at 159. The court went on to state that while foreseeability was not necessarily the controlling factor in measuring compliance with due process,

> [i]f the sale of a product of a distributor is not an isolated occurrence, but arises from the efforts of the distributor to serve, directly or indirectly, the market for its products in other states, it is not unreasonable to subject it to suit in one of those states if its allegedly defective merchandise has there been the source of injury to its owner or others.

*Id.*

The Girauds, like the defendant in the *Plant Food* case, sought to serve the California market. While the injury complained of is not the result of a defective product, the antitrust action is similar to an action in tort and focus on the foreseeable location of the injury is appropriate. *Cf. Texas Industries, Inc. v. Radcliff Materials, Inc.*, —— U.S. ——, ——, 101 S.Ct. 2061, 2062–63, 68 L.Ed.2d 500 (1981) ("courts generally have acknowledged that treble-damages actions under the antitrust laws are analogous to common-law actions sounding in tort"); *Pfizer, Inc. v. Government of India*, 434 U.S. 308, 98 S.Ct. 584, 54 L.Ed.2d 563 (1978) (common-law business torts are "similar in general nature to antitrust claims"). Also, the injury is the result of intentional rather than negligent conduct,

thus indicating a greater degree of interjection into California. *See Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266 (9th Cir. 1981) ("negligent action at a distance . . . is less an interjection into the state than would be action intended to injure," at 1271).

The injury itself is significant in this case. The contract, as the district court viewed it, was negotiated, executed and to be performed in France. The court apparently relied on the FOB term in concluding that performance took place in France. We focus instead on the breach, the conspiracy, and the effect of both in California which made it reasonable to anticipate that this lawsuit would be filed there. While the FOB term might be relevant in the case of an isolated sale [3] in California, it loses significance in the face of the injury alleged here, which occurred independently of the technicality of where risk and title passed. The injury to Taubler's livelihood and business reputation occurred in California, and the Girauds knew that this was a probable result of their actions. The breach, the conspiracy, and the resultant injury are thus a significant contact with California.

The Girauds' other contacts must be viewed in concert with the agreement and its breach. The Girauds note that telephone calls and international communications were not sufficient minimum contacts in the case of *Thomas P. Gonzalez Corp. v. Consejo Nacional de Producion de Costa Rica*, 614 F.2d 1247 (9th Cir. 1980). In that case, however, the forum state was neither the source nor the destination of the product which gave rise to the dispute. The negotiation communications to and from the forum state were insufficient standing alone to support jurisdiction. *Id.* at 1254. In the instant case, the communications combined with the fact that California was the intended destination of the wine lend credence to Taubler's theory that the Girauds were serious businessmen who fully intended to enter the California market and

---

**3.** We need not decide whether a simple breach of contract by a foreign defendant standing alone would be sufficient to justify personal jurisdiction. In this case the refusal to sell was an integral part of the conspiracy to favor Somerset and to injure Taubler's California business interests.

avail themselves of the benefits of doing business there.

Similarly, the payment of customs fees, registration for fair-trade benefits, flying Taubler to New York for meetings, and later communicating with Taubler's competitors and former customers, create an overall impression that the Girauds viewed the California market as part of their business. In *Thomas P. Gonzalez*, this court gave approval to the California Supreme Court's focus on the economic reality of a series of transactions:

> In analyzing the defendant's activities we must focus upon "economic reality" rather than a mechanical checklist.

*Id.* at 1254, *citing Foster v. Mooney Aircraft Corp.*, 68 Cal.App.3d 887, 137 Cal.Rptr. 694, 697 (1977).

In this case the economic reality is that the Girauds were selling wine for distribution in California and, if Taubler proves his case, conspiring to injure a California citizen[4] in California. Compare *Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d at 1274 (finding no Alaska jurisdiction over action for faulty ship repairs made in Mexico where ship was known to be destined for Alaska but where "[t]here was no deliberate effort on the part of the defendant to serve an Alaskan market nor did the defendant make any use of a distributive scheme designed to place any goods or services in Alaska or any other part of the United States . . . ." Schroeder, J., specially concurring).

The interest of the forum state in this case is significant. State and federal antitrust violations should not go without a domestic remedy. California has a strong economic interest in promoting commercial stability through enforcement of contracts and discouragement of predatory price discrimination. In *Marina Salina Cruz*, the plaintiffs were non-residents. The court recognized the heightened state interest in protecting its own citizens. *Id.*, at 1272. Taubler is a California citizen.

Efficiency also points to California. Many, although not all, of the witnesses are in California, including Taubler's customers and persons familiar with the California wine market and pricing policies. Alleged co-conspirators and a related ongoing civil action are in California.

We are not blind to the possible hardship the Girauds will face in defending an action in California even though they are doing business in the United States. Nor do we ignore the Girauds' complaint that their contacts with California are not substantial. Their list of things they did not do in California is long: they had no California office; they did not visit there during the duration of the contract; they did not own property there or hire California employees. Due process, however, does not require substantial contacts. It requires minimum contacts and that, in the balance of things, imposition of jurisdiction shall be fair. *Plant Food Co-op v. Wolfkill Feed and Fertilizer, supra* at 158.

As in *Marina Salina Cruz*, we caution against a reading of this opinion as finding any one fact in this case as controlling. Our decision that personal jurisdiction is proper follows from a collective view of the facts, from the nature of the Girauds' business, and from the injury of which Taubler complains.

### III. *Conclusion*

The district court erred as a matter of law in dismissing this case for lack of personal jurisdiction over the defendants. The Girauds' contacts with California, viewed in their totality, are sufficient to meet the requirements of due process for the purpose of the contract and antitrust claims against them.

The order of dismissal is REVERSED and the case REMANDED for further proceedings.

---

4. The Girauds argue that Taubler's residence in California is immaterial. While the unilateral activity of a plaintiff is not sufficient to justify jurisdiction, *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), foreseeable injury to a California plaintiff in California caused by the defendant is relevant in the personal jurisdiction analysis.