John L. FALEN and Sharon L. Falen, individually and doing business as John L. Falen Livestock, et al., Plaintiffs,

v.

CERVI LIVESTOCK COMPANY, a Colorado corporation, Defendants.

CERVI LIVESTOCK COMPANY, a Colorado corporation, Third-Party Plaintiff,

v.

C.E. DIXON, Bill J. Machart, John H. Colling and Rob Fischer, dba Farmers Commission Company, Third-Party Defendant.

No. CV–R–81–138–ECR.

United States District Court, D. Nevada.

Feb. 17, 1984.

As Amended Feb. 27, 1984.

See also D.C., 581 F.Supp. 883.

Keith L. Lee, Reno, Nev., for plaintiffs.

Gordon H. DePaoli, Suellen E. Fulstone, Woodburn, Wedge, Blakey & Jeppson, Reno, Nev., for Cervi Livestock Co.

Eugene J. Wait, Jr., Reno, Nev., for third-party defendant C.E. Dixon.

Gordon M. Cowan, Reno, Nev., for third-party defendant Machart.

Allison, Brunetti, MacKenzie, Hartman, Soumbeniotis & Russell by George V. Allison, Carson City, Nev., for third-party defendant America Stockyards Corp., dba Mid America Stockyards Corp.

## MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., District Judge.

Third-Party Defendant C.E. DIXON (Dixon) has moved pursuant to Fed.R.Civ.P. 12(b)(2) for an order dismissing the First Amended Third-Party Complaint against him because of lack of in personam jurisdiction over him. Points and authorities have been submitted along with affidavits and exhibits.

The said Complaint alleges that Third-Party Plaintiff Cervi Livestock Company purchased some cattle from Dixon, a citizen of Kansas, and sold them to the plaintiffs. The plaintiffs have sued Cervi for damages because some of the cattle were not brucellosis-free and some were not pregnant. The pleading declares that Dixon fraudulently misrepresented the condition of the cattle, and also breached the implied warranties of merchantability and fitness for a particular use (cow-calf operations). The prayer is for indemnity against Dixon to the extent Cervi may be found liable to the plaintiffs.

Dixon sold some 460 cows to a Mr. Rutherford. Arrangements were made for the animals to remain on a cornstalk pasture, of which Dixon was lessee, until the cattle could be sold. The cattle all reportedly tested negative as to brucellosis, and a veterinarian so certified them. Cervi brokered the cattle to the plaintiffs. The veterinarian's certificates, showing a Colorado destination, together with brand inspection certificates signed by Dixon, as the seller, and showing a Nevada destination, accompanied the animals as they were loaded onto trucks in Nebraska and driven into Colorado. (Dixon claims that he was not the owner of the cattle at the time of shipment; he was merely acting on Mr. Rutherford's behalf and received no financial benefit therefrom. Further, he contends that there was no destination written on the brand inspection certificates when he signed them). The cattle were unloaded, dipped for scabies, and rested for a few hours in Colorado. Then a Colorado veterinarian, relying on the brucellosis-free certification that had accompanied the cattle from Nebraska, recertified the cattle and they were trucked on to the plaintiffs in Nevada. Over the next seven months the plaintiffs learned that thirteen of the cows were not pregnant and ten had brucellosis.

Dixon has had no business transactions in Nevada and has not sought to serve the Nevada cattle market either directly or indirectly. In fact, he is primarily a wheat farmer, rather than a cattle trader. He contends that he did not know that the subject cows were destined for Nevada; he only knew that they were to be transported to Colorado. This contention is contradicted both by the brand inspection certificates he signed and by the affidavit of Ken Woods, who reported that he was present just prior to the shipment out of Nebraska and that Dixon knew at the time that the ultimate destination was Nevada.

A two-step test is used to determine whether in personam jurisdiction exists. First, it must be ascertained whether the state's long-arm statute applies and, if so, then it must be decided whether application of the statute is consistent with due process. *Taubler v. Giraud*, 655 F.2d 991, 993 (9th Cir.1981).

■ Nevada's long-arm statute is found at NRS 14.065. It applies only to claims for relief which arise from certain specified acts which took place in Nevada. *Shapiro v. Pavlikowski*, 98 Nev. 548, 654 P.2d 1030, 1031 (1982); *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir.1980). The statute includes "[t]ransacting any business" and "[c]ommitting a tortious act" within the State as types of acts that may give rise to jurisdiction over a nonresident defendant. Dixon's alleged shipment of brucellosis-infected cattle into Nevada, which purportedly has given rise to damages to the plaintiff's cow-calf operations within the State, could be covered by both of the above-described types of acts.

■ Due process requires that the defendant have sufficient minimum contacts with the forum state whereby the exercise of personal jurisdiction comports with tra-

ditional notions of fair play and substantial justice. *Taubler v. Giraud, supra* at 993. The question is whether the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ Clearly, Dixon's contacts with Nevada have not been so significant as to justify general jurisdiction over him. Rather, the issue is whether it is fair to assert jurisdiction over him for the limited purpose of Cervi's third-party complaint. The criteria for determining whether the due process requirements for exercising limited jurisdiction have been met are: (1) The nonresident defendant must have done some act or consummated some transaction within the forum by which he purposefully availed himself of the privilege of conducting activities there; (2) The claim against him must have arisen out of or resulted from the defendant's forum-related activities; and (3) The exercise of jurisdiction must be reasonable. *Taubler* at 993; *Plant Food Co-Op v. Wolfkill Feed & Fertilizer,* 633 F.2d 155, 159 (9th Cir.1980).

■ Delivering things into the stream of commerce with the expectation they will reach the forum state can satisfy the first criterion. *Raffaele v. Compagnie Generale Maritime,* 707 F.2d 395, 397 (9th Cir. 1983). Dixon's shipment of the cattle to Nevada was intentional and purposeful, rather than the act of another party which he couldn't control. His own affirmative act served to interject him into the Nevada transaction. *See Plant Food Co-op* at 159; *Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280, 1288 (9th Cir.1977). It was foreseeable that the injury from the shipment of sick cattle into Nevada would impact in the State and that any lawsuit might be brought here. *See Taubler v. Giraud,* 655 F.2d 991, 995 (9th Cir.1981). Even one purposeful act with effects in the forum state can support jurisdiction. *Raffaele* at 397; *Wells Fargo & Co. v. Wells Fargo Exp. Co.,* 556 F.2d 406, 415 (9th Cir.1977).

■ Dixon's act of shipping sick cattle to Nevada also satisfies the second due process criterion, i.e., that the claims against him arose or resulted from his forum-related activities. *See Plant Food Co-Op* at 159; *Hedrick v. Daiko Shoji Co., Ltd., Osaka,* 715 F.2d 1355, 1358 (9th Cir.1983).

■ The reasonableness of the exercise of jurisdiction over the nonresident defendant, which is the third criterion, cannot be determined mechanically. Seven factors first listed in *Ins. Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1270 (9th Cir.1981) are considered illuminative, however. *See Hedrick* at 1359; *Taubler* at 994; *Raffaele* at 398. The first one is the extent of the defendant's purposeful interjection into the forum state. Here, Dixon's act is a one-time only happening. The fact that the activity was purposeful tends to help neutralize the infrequency of contact; nevertheless this factor weighs against a finding of reasonableness. *See Ins. Co. of North America* at 1271. The second factor is the burden on the defendant of defending himself in the forum state. Again, where the defendant has done little to interject himself into the forum state and his resources do not appear to be any greater than those of the plaintiffs, as is the case here, it seems unreasonable to exercise jurisdiction. *See Id.* at 1272; *Raffaele* at 398.

A third factor is the extent of conflict with the sovereignty of the defendant's state. Kansas hardly would consider its sovereignty violated if a forum in another state were to hold a Kansas citizen liable for damages for shipping diseased cattle into the forum state. The fourth factor also weighs in favor of the assertion of jurisdiction. It is the forum state's interest in adjudicating the dispute. The plaintiff's entire herds of cattle were quarantined after brucellosis was discovered in some of the animals. This demonstrates the seriousness of the potential impact in Nevada.

A fifth factor is the most efficient judicial resolution of the controversy. The

place where witnesses and evidence will be most readily available ordinarily would be the most efficient forum. *Raffaele* at 399. This is an ambiguous standard here, for Nevada would be the more convenient place to present evidence as to the defective condition of the cattle and the extent of the plaintiffs' damages. On the other hand, the forum of some other state, e.g., Colorado or Kansas, figures to be more convenient in establishing responsibility for the shipment and for the defective condition of the cattle. A sixth factor that is also indecisive in the instant action is the importance of the forum to the plaintiff's interest in convenient and effective relief. This usually has significance where the defendant is either a foreign person or entity or where the resources of the opposing parties are markedly unequal. It has been said that the primary concern is for the burden on the defendant. *Ins. Co. of North America* at 1272. However, it also has been noted that the burden on the defendant should be considered in light of the burden on the plaintiff. *Raffaele* at 398. Here we have Nevada plaintiffs, a Colorado defendant/third-party plaintiff and a Kansas third-party defendant. The seventh factor is the availability of an alternative forum. The plaintiffs carry the burden of going forward on this issue. *Ins. Co. of North America* at 1273. They would have to show that no alternative forum is reasonably available. This would entail questions of subject matter jurisdiction and in personam jurisdiction over indispensable and proper parties. No showing has been made here as to this factor.

Both third-party plaintiff Cervi and the plaintiffs want this Court to exercise in personam jurisdiction over Dixon. The principle of judicial efficiency, which affects the parties, the witnesses and the court, support the plaintiffs' original choice of this forum. Cervi has sustained its burden of showing that the assertion of jurisdiction over Dixon would be reasonable in a due process sense. All the other tests and criteria for this Court to act clearly have been satisfied.

IT IS, THEREFORE, HEREBY ORDERED that Third-Party Defendant C.E. DIXON's motion to dismiss the First Amended Third-Party Complaint against him be, and the same hereby is, DENIED.