**FIRST NATIONAL MONTANA BANK OF MISSOULA, a national banking association, Plaintiff,**

v.

**FEDERAL LEASING, INC., a Maryland corporation, and Amperif Corporation, a California corporation, Defendants.**

**No. CV 84–180–M.**

United States District Court,
D. Montana,
Missoula Division.

Oct. 11, 1985.

William Crowley, James J. Benn, Boone, Karlberg & Haddon, Missoula, Mont., for plaintiff.

G. Stewart Webb, Jr., Venable, Baetjar & Howard, Baltimore, Md., Ronald A. Bender, Worden, Thane & Haines, Missoula, Mont., for defendant Federal.

Michael E. Dempsey & Daniel Smart, Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, Beverly Hills, Cal., Donald Snavely, Snavely & Phillips, Missoula, Mont., for defendant Amperif.

## OPINION AND ORDER

LOVELL, District Judge.

This action arises out of the sale to plaintiff (the "Bank") of a lease between defendant Amperif Corporation ("Amperif") and the United States Navy. Amperif, a California corporation with offices in California and Maryland, is in the business of manufacturing computer hardware which is leased to the United States Government. The leases are subsequently sold to brokers who sell them to third party investors.

In May, 1979, Amperif and the Navy entered into a lease contract for the provision of certain services and equipment to the Naval Weapons Center located at China Lake, California. The original term of the lease was to expire in June, 1982. On July 31, 1980, Amperif sold the lease to defendant Federal Leasing, Inc. ("Leasing"), a broker of federal government leases. Among the documents executed in consummation of the sale was an Assignment, as required by law, for the purpose of giving notice to the United States. 41 U.S.C. § 15 (1951). In conformity with what appears to be Leasing's practice, the Assignment was executed by Amperif as assignor and the

identity of the assignee was left blank. Several weeks later, the interest was assigned to the Bank by Leasing, and the Bank's name and address were typed into the Assignment previously executed by Amperif.

Two years later, the lease between Amperif and the Navy was amended, giving both parties additional rights and duties. Again, Amperif transferred its rights to receive payment under the amended lease to Leasing. Leasing in turn assigned these additional rights to the Bank. Disputes between the parties later arose with respect to the obligations of the United States under the amended lease. Amperif and the Bank entered into an agreement in 1983 by which Amperif agreed to exercise its best efforts to remarket the equipment which the government failed to purchase.

Attempts to resolve the matter having failed, the Bank filed suit in September, 1984, alleging various claims of breach of contract, failure of consideration, constructive fraud and others.

Before the Court is Amperif's motion to dismiss for want of personal jurisdiction. Amperif claims that it at no time transacted any business in Montana, entered into any agreements in Montana, committed any tort in Montana, acquired any property in Montana, or otherwise purposefully availed itself of the protections of the laws of Montana.

■ In the Ninth Circuit, there is a two-part test to determine whether *in personam* jurisdiction exists over a defendant in a diversity case. First, the court must apply the long-arm statute of the state in which it sits. *Paccar International, Inc. v. Commercial Bank of Kuwait*, 757 F.2d 1058 (9th Cir.1985). Second, the court determines whether application of the statute is consistent with due process. *Taubler v. Giraud*, 655 F.2d 991 (9th Cir.1981).

Montana's long-arm statute is contained in Rule 4B, M.R.Civ.P., which has been interpreted liberally in favor of finding jurisdiction in Montana courts. *Prentice Lumber Co., Inc. v. Spahn*, 156 Mont. 68, 474 P.2d 141 (1970). The Bank contends that Amperif could be subjected to jurisdiction here under any of the factors enumerated in Rule 4B. Assuming the validity of the Bank's arguments, the court still must determine that exercise of jurisdiction over Amperif would be consistent with due process.

■ Exercise of personal jurisdiction over a non-resident defendant is consistent with due process in one of two circumstances. First, general jurisdiction will lie if the defendant's activities in the state are substantial and continuous, even if the cause of action is not related to defendant's activities in the forum state. *Pacific Atlantic Trading Co., v. M/V Main Exp.*, 758 F.2d 1325 (9th Cir.1985). Second, if the defendant's activities are not sufficiently pervasive to support general jurisdiction, the nature and quality of the forum-related activities must be evaluated in relation to the specific cause of action to determine whether limited jurisdiction exists. *Id.*

■ It is clear that Amperif does not have such systematic and continuous contact with Montana as to subject it to general personal jurisdiction here. Thus, jurisdiction over Amperif must be based on its forum-related activities. The Ninth Circuit has adopted a three-pronged approach for evaluating the defendant's contacts with the forum to ascertain whether limited jurisdiction exists:

(1) The non-resident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) The claim must be one which arises out of or results from the defendant's forum-related activities; and

(3) Exercise of jurisdiction must be reasonable.

*Data Disc Inc. v. Systems Tech. Assoc.*, 557 F.2d 1280 (9th Cir.1977) Under the first *Data Disc* test, plaintiff here must prove that Amperif has done some act by which it purposefully invoked the benefits

and protections of the laws of the State of Montana. The Bank insists that the rule set forth in *Scanlan v. Norma Projektil Fabrik,* 345 F.Supp. 292 (D.Mont.1972), requires assumption of jurisdiction in this case. Judge Smith held in *Scanlan* that "due process is not denied when a manufacturer who sells goods intending that they be generally distributed and used in any place where a market may be found is forced to defend those products in the places where the products go." *Id,* at 293.

 In this case, Amperif entered into a contract with Federal Leasing, by the terms of which Amperif sold all of its interest in and to the Navy lease. Subsequently, the payment rights ended up in the hands of a Montana resident.[1] There are two important distinctions between this transaction and the marketing of a product. First, Amperif is not in the business of manufacturing a product for general distribution in any place where a market may be found. Rather, Amperif is in the business of manufacturing computer hardware for lease to the United States Government. When Amperif sold the Navy lease to Federal Leasing, it sold an intangible right to receive payment. This is distinguishable from the sale of a product on a national market. Second, even if the Bank is correct in its assertion that the assignment was actually between it and Amperif, with Federal Leasing as a middleman, the bare existence of that contract is an insufficient basis for exercise of jurisdiction. *Simmons v. State,* —— Mont. ——, 670 P.2d 1372, 1380 (1983); *Paccar International, Inc., supra.,* 757 F.2d at 1063. Even if the court were to hold otherwise, the Bank has not shown that the third element of the *Data Disc* test is satisfied. Exercise of jurisdiction must be *reasonable.* With respect to this part of the test, the Ninth Circuit has enumerated seven factors to be applied in determining whether exercise of jurisdiction comports with traditional notions of fair play and substantial justice:

(1) The extent of the defendant's purposeful interjection into the forum state;

(2) The burden on the defendant of defending in the forum;

(3) The extent of conflict with the sovereignty of the defendant state;

(4) The forum state's interest in adjudicating the dispute;

(5) The most efficient judicial resolution of the controversy;

(6) Importance of the forum to plaintiff's interest in convenient and effective relief; and

(7) The existence of an alternative forum.

*Insurance Company of North America v. Marina Salina Cruz,* 649 F.2d 1266 (9th Cir.1981). The Ninth Circuit cases suggest that the court undertake a factual analysis of each factor.

*1. Extent of purposeful interjection into forum state.*

 This component of the analysis "requires that a defendant must in some way step outside the exclusive protection of his own state and engage in activities touching another sovereignty." *Insurance Co. of North America v. Marina Salina Cruz, supra.,* at 1272. The Ninth Circuit has interpreted *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), as "caution[ing] against using the fortuitous arrival of a product in a given state as the basis for jurisdiction." *Taubler v. Giraud, supra,* 655 F.2d at 994. The court has found sufficient purposeful interjection when the non-resident defendant *knew* that its product was destined for the forum state, and thus could reasonably anticipate injury there. *Id.,* at 994; *Raffaele v. Compagnie Generale Maritime,* 707 F.2d 395 (9th Cir.1983). In the present case, Amperif had no knowledge at the time it executed the assignment that the lease rights would travel to Montana; as

---

**1.** No party has offered an explanation of how the lease found its way to Montana, i.e., whether the Bank sought out such investments or whether Leasing advertised its business on the national market in pursuit of prospective investors.

such, it cannot be said to have purposefully interjected itself into this state.[2]

### 2. Burden on Amperif of defending in the forum.

This factor usually becomes important only where the defendant is a citizen of a foreign country and would be required to travel a great distance to the forum state. *Marina Salina Cruz, supra.* Regardless of the forum in which this action is tried, two of the parties will be compelled to travel; given the ease of travel within the United States, this factor is not critical.

### 3. Extent of conflict with the sovereignty of California.

This factor is of greatest importance when the conflict is with a foreign nation. However, the United States Supreme Court has held that one function of the concept of minimum contacts is "to ensure that the States, through their courts, do not reach out beyond their status as co-equal sovereigns in a federal system." *World-Wide Volkswagen, supra,* 444 U.S. at 291, 100 S.Ct. at 564, 62 L.Ed.2d at 498. Between the two states, California has a greater sovereign interest in this matter, insofar as the defendant resides and conducts business there, and the situs of the underlying lease is in California.

### 4. Forum state's interest in adjudicating the dispute.

The *Simmons* case provides appropriate treatment of this factor:

Montana courts certainly have an interest in allowing Montana plaintiffs to seek restitution for tortious conduct. [Citation omitted.] However, it can almost always be said that a state has a legitimate interest in protecting legal rights. And this right may not be so compelling "as to outweigh the factors militating against jurisdiction." [Citations omitted.] Likewise, the Montana forum may

provide both convenient and effective relief for plaintiff, especially if a multiplicity of lawsuits can be avoided. But ... this interest of plaintiffs might not be as significant if the plaintiff has the power to select a different forum.

*Simmons v. State, supra,* 670 P.2d at 1383. This language is particularly apropos here, where Montana clearly has an interest in protecting the legal rights of a Montana bank. Montana's interest, however, is insufficient to satisfy the requirements imposed by the Due Process Clause.

### 5. Most efficient judicial resolution.

Given the nature of this case and the possibility of additional parties being named, it seems that a California forum would provide the most efficient judicial resolution of this matter. Since Amperif's principal place of business is in California, most of the evidence and witnesses are likely to be in California. Any tortious acts committed by Amperif were committed outside the State of Montana. The lease underlying this case involves the Naval Weapons Center located at China Lake, California. Finally, any actions of Amperif within Montana have little or no relation to the Bank's claim against it. All of Amperif's contacts with the Bank in Montana were made *after* difficulties developed with the lease, not at the time of occurrence of the event which formed the basis of this action. *See, Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion etc.,* 614 F.2d 1247, 1254 (9th Cir.1980).

### 6. Importance of the forum to plaintiff's interest in convenient and effective relief.

This factor is adequately disposed of by the language from *Simmons* quoted above, where the Supreme Court of Montana stated that this interest of plaintiff's is not as significant if plaintiff has the power to select a different forum.

---

**2.** The court does not intend to sanction the practice of executing documents which are left partially blank. However, even though the transaction was not finalized in its entirety until

the Bank executed the documents in Montana, Amperif's interest in the lease was relinquished upon consummation of the sale to Leasing.

*7. Existence of an alternative forum.*

Plaintiff clearly has the power to bring suit in California or in Maryland. Were plaintiff to sue in federal district court in California, all defendants would be subject to the court's jurisdiction. As evidenced by Exhibit "D" to the complaint, Federal Leasing and Amperif have a continuing business relationship, and a California court would no doubt have personal jurisdiction over Leasing.

The essence of the Bank's argument here is that Amperif, by allowing its leases to be sold on a national market, could have foreseen that one or more of them would end up in Montana and thus that disputes could arise in Montana. The United States Supreme Court disagrees with this type reasoning:

> "Foreseeability" alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause ...
>
> If foreseeability were the criterion, ..... [e]very seller of chattels would in effect appoint the chattel his agent for service of process. His amenability to suit would travel with the chattel....
>
> This is not to say, of course, that foreseeability is totally irrelevant, but foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.

*World-Wide Volkswagen, supra,* 444 U.S. at 295–97, 100 S.Ct. at 566–67, 62 L.Ed.2d at 500–01. Under the rulings of *World-Wide Volkswagen* and its Ninth Circuit progeny, due process and considerations of fundamental fairness demand that Amperif be dismissed from this case for lack of personal jurisdiction.

THEREFORE, IT IS HEREBY ORDERED that the motion of Defendant Amperif Corporation is GRANTED, and the complaint is dismissed as to said Defendant for lack of personal jurisdiction.