UNITED STATES of America,
Petitioner,

v.

TOYOTA MOTOR CORPORATION, et
al., Respondents.

No. CV 83–0687–CHH.

United States District Court,
C.D. California.

April 8, 1983.

Stephen S. Trott, U.S. Atty., Charles H. Magnuson, Asst. U.S. Atty., Chief, Tax Div., Los Angeles, Cal., Daniel F. Ross, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for petitioner.

Gibson, Dunn & Crutcher, Robert S. Warren, James G. Phillipp, Phillip L. Bosl, Los Angeles, Cal., for respondents Toyota Motor Sales, U.S.A., Inc. and Mr. Isao Makino.

Musick, Peeler & Garrett, Bruce A. Bevan, Jr., P.C., William McD. Miller, III, Los Angeles, Cal., Miller & Chevalier, Chartered, John S. Nolan, Jay L. Carlson, Mark L. Evans, Homer E. Moyer, Jr., Washington, D.C., for respondent Toyota Motor Corp.

## MEMORANDUM OPINION

CYNTHIA HOLCOMB HALL, District Judge.

This is an action brought under section 7604 of the Internal Revenue Code, 26 U.S.C. § 7604,[1] to enforce two summonses,[2] one issued to Toyota Motor Corporation, a Japanese corporation ("Toyota Japan"), and the other to Toyota Japan's wholly-owned subsidiary, Toyota Motor Sales, U.S.A., Inc. ("Toyota U.S.A."). The Internal Revenue Service ("IRS") issued these summonses during the course of an audit of Toyota U.S.A.'s income tax liability for fiscal years 1975 through 1978, in order to determine whether Toyota U.S.A. shifted any of its income to its foreign parents[3] and thereby avoid United States taxes. This inquiry is conducted pursuant to the provisions of Internal Revenue Code section 482, which states that:

> In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such or-

---

1. The district court's enforcement jurisdiction is defined in section 7604(a), which provides that:

   If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

   Similar language appears in 26 U.S.C. § 7402(b), which applies generally to civil actions brought by the United States.

2. Each summons requires production of the same information, including the direct and indirect costs of material, labor and other expenses pertaining to automobile manufacturing; the direct and indirect selling, general and administrative expenses pertaining to sales of passenger automobiles in Japan and the United States; and the factors, both economic and otherwise, entering into the determination of the transfer price charged to Toyota U.S.A. by Toyota Japan.

3. Toyota Motor Corporation was formed July 1, 1982, as a result of the merger of Toyota Motor Company, Ltd., and Toyota Motor Sales Co., Ltd. Toyota Motor Sales was established in 1950 to distribute motor vehicles manufactured by Toyota Motor Company. Prior to the merger, each of the Japanese corporations owned a 50 percent interest in Toyota U.S.A.

ganizations, trades or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

In order to make a section 482 determination, the IRS summoned, among other items, certain books and records allegedly possessed by Toyota Japan. This memorandum opinion deals with four preliminary issues raised by Toyota Japan in opposing enforcement of the IRS summons: (1) whether the court has personal jurisdiction over Toyota Japan; (2) whether subject matter jurisdiction exists over the IRS enforcement petition; (3) whether venue is proper in the Central District of California; and (4) whether Toyota Japan was properly served with process.

The Court denied Toyota Japan's motion to dismiss on all four points in its Order of March 14, 1983, as amended March 29, 1983. The basis for that decision is set forth below:

## I. JURISDICTIONAL FACTS

Toyota Japan is a corporation organized under the laws of Japan with its headquarters and principal place of business in Japan. It is primarily engaged in the manufacture and sale of motor vehicles, which are marketed in Japan, the United States, and other nations throughout the world. Toyota U.S.A., a California corporation headquartered in Torrance, California, is a wholly-owned subsidiary of Toyota Japan and is the exclusive importer of Toyota passenger cars, light duty trucks, and cab/chassis into the continental United States. All sales of Toyota vehicles are FOB Japan, and Toyota U.S.A. handles all shipping to and distribution within the United States. All advertising and marketing of Toyota products are handled by the United States subsidiary. Although Toyota U.S.A. is operated as a distinct corporate entity, with its own books, records, bank accounts, tax returns, financial statements, and accounting procedures, there is a significant overlap between the senior management and board of directors of the parent and the subsidiary. For example, Isao Makino, President of Toyota U.S.A., serves as Senior Managing Director of Toyota Japan, and both the President and Chairman of Toyota Japan serve as directors of Toyota U.S.A. In addition to the interlocking directorates of the parent and subsidiary, approximately two dozen employees of Toyota U.S.A. were formerly employed by Toyota Japan and, in all likelihood, will eventually return to the employment of the Japanese parent.[4]

Toyota Japan derives substantial economic benefits from the sales of its vehicles by its subsidiary in the United States. In fiscal year 1982, for example, Toyota U.S.A.'s sales exceeded $5 billion, and the subsidiary paid $10 million in dividends to the parent. Toyota U.S.A. imports and sells over 600,000 vehicles each year, and employs approximately 2,100 people throughout the United States. These operations produce profits for Toyota Japan, both from the dividends paid it by Toyota U.S.A. and from Toyota U.S.A.'s purchases of automobiles from the parent corporation. Indubitably, the management, directors, and owners of Toyota Japan knew and intended that the automobiles manufactured by their corporation would be purchased by consumers in the United States.

## II. PERSONAL JURISDICTION

■ The Court's adjudicatory authority over Toyota Japan requires a two-step test. An outer boundary of *in personam* jurisdiction is defined for a federal district court by the due process clause of the Fifth Amendment, and requires considerations of fairness and comity. Within this boundary, or in some cases coextensive with it, is the authority conferred upon the Court by statute. *See Taubler v. Giraud,* 655 F.2d 991, 993 (9th Cir.1981); *Data Disc, Inc. v. Sys-*

---

4. A more detailed discussion of the parent-subsidiary relationship common to many Japanese corporations can be found in *Bulova Watch*

*Co., Inc. v. K. Hattori & Co., Ltd.,* 508 F.Supp. 1322, 1339–40 (E.D.N.Y.1981).

*tems Technology Associates, Inc.,* 557 F.2d 1280 (9th Cir.1977); *Stabilisierungsfonds fur Wein v. Kaiser Stuhl Wine Dist. Pty. Ltd.,* 647 F.2d 200, 203 (D.C.Cir.1981) (hereinafter cited as *"Kaiser Stuhl"*).

In this case, personal jurisdiction is conferred by 26 U.S.C. §§ 7402(b) and 7604(a). The Court's initial inquiry is whether Toyota Japan can be compelled to appear in this court by the terms of these statutes. If so, the Court must then determine whether this compulsion is constitutionally permitted.

### A. JURISDICTION CONFERRED BY STATUTE

Section 7604(a) of the Internal Revenue Code provides that the IRS may bring a petition to enforce a summons in the "district court for the district in which [the person summoned] resides or is found." The parties agree that Toyota Japan "resides" in Japan by virtue of the fact that it is organized under the laws of Japan and has its principal place of business in that nation. The initial statutory issue presented is whether Toyota Japan can be "found," for jurisdictional purposes, in the Central District of California.

Statutory interpretation must begin with the language of the statute. In this instance, there does not appear to be any case law interpreting "found" in the context of this statute. The legislative history is silent concerning the congressional intent underlying the enactment of this provision.[5]

Because of this dearth of authority, the parties have based their arguments on the interpretation given "found" in other statutes defining judicial power. Toyota Japan initially argues that a construction of "found" should be based upon the decision in *People's Tobacco Co. v. American Tobacco Co.,* 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587 (1918), which gave the word a restrictive interpretation in the context of the Sherman Act of 1890. This argument is flawed, as *People's Tobacco* was based upon the physical power concepts discarded in *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).[6] More recent cases, by contrast, have construed "found" to evince a legislative intent to expand adjudicatory authority. *See, e.g., Varsic v. United States District Court,* 607 F.2d 245 (9th Cir.1979). This approach is well illustrated by the interpretation given the copyright venue provisions of 28 U.S.C. § 1400(a), where it has been said that "[a] corporation is 'found' in any district in which personal jurisdiction might be obtained over it." *Mode Art Jewelers Co. v. Expansion Jewelry Ltd.,* 409 F.Supp. 921, 923 (S.D.N.Y.1976). Given the Ninth Circuit's view in *Varsic,* there are no semantical constraints to reading "found" as conferring broad jurisdictional authority upon the district courts.

An expansive reading of "found" is supported by the statutory scheme authorizing IRS summons power. Internal Revenue Code section 7602 states that the IRS may examine *any* relevant records in the

---

**5.** Congress first conferred the power to issue Internal Revenue summonses in the Act of June 30, 1864, ch. 173, § 14, 13 Stat. 223, 226 (1864). The Act authorized the district assessor to issue a summons and, if the person summoned failed to respond, "to apply to the judge of the district court . . . for an attachment against such person as for a contempt." *Id.* Title XXXV of the Revised Statutes of 1874 specified that the "collector may summon any person residing or found within the State in which his district lies" (§ 3173); if the person refused to obey the summons, the collector was authorized to "apply [for an attachment] to the judge of the district court . . . for the district within which the person so summoned resides" (§ 3175). The Income Tax Act of 1913, Pub.L. No. 63–16, § II(K), 38 Stat. 179 (1913), and the

Internal Revenue Code of 1939, § 3633(a), adopted the same provisions for issuance and enforcement of summonses. In the 1954 Code, Congress added following "resides" the phrase "or is found." See S.Rep. No. 1622, 83d Cong., 2d Sess. 617 (1954) U.S.Code Cong. & Admin. News, p. 4017.

**6.** The physical power rationale of this era is best summarized by Justice Holmes' statement in *McDonald v. Mabee,* 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 60 (1917): "The foundation of jurisdiction is physical power . . . ." The Supreme Court expressly rejected this restrictive outlook in *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158; accordingly, it is of little weight in resolving the issue at hand.

custody of *any* person to determine the liability of *any* person for *any* internal revenue tax.[7] The apparent breadth of this authority has been repeatedly confirmed by the Supreme Court, most recently in *United States v. Euge,* 444 U.S. 707, 711, 100 S.Ct. 874, 878, 63 L.Ed.2d 141 (1980):

> [T]his Court has consistently construed congressional intent to require that if the summons authority claimed is necessary for the effective performance of congressionally imposed responsibilities to enforce the tax Code, that authority should be upheld absent express statutory prohibition or substantial countervailing policies.

In the case at hand, the Government has alleged that Toyota Japan has custody of books, papers, records and other data necessary to determine the tax liability of Toyota U.S.A. Nothing in the language of section 7602 precludes issuance of a summons against a foreign parent corporation possessing information relevant to the taxation of its subsidiary.[8] Instead, this sort of investigation appears to fall within the scope of inquiries authorized by section 482 of the Internal Revenue Code. When income flows from a subsidiary to its corporate parent, the IRS may seek to make adjustments that clearly reflect the subsidiary's income. *See, e.g., E.I. du Pont de Nemours & Co. v. United States,* 608 F.2d 445 (Ct.Cl. 1979), *cert. denied,* 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980). Because the

federal courts are placed between the Government and the person summoned to provide protection from improper actions, *United States v. Bisceglia,* 420 U.S. 141, 151, 95 S.Ct. 915, 921, 43 L.Ed.2d 88 (1975), it follows that the jurisdictional power conferred by sections 7402(b) and 7604(a) should be construed to extend at least as far as the administrative summons power accorded the IRS by section 7602.

■ Respondent Toyota Japan's argument to the contrary is largely based upon cases giving "found" a restrictive meaning in the context of the Clayton Act, 15 U.S.C. § 22. *See, e.g., Kramer Motors, Inc. v. British Leyland, Ltd.,* 628 F.2d 1175 (9th Cir.), *cert. denied,* 449 U.S. 1062, 101 S.Ct. 785, 66 L.Ed.2d 604 (1980); *O.S.C. Corp. v. Toshiba America, Inc.,* 491 F.2d 1064 (9th Cir.1974); *Williams v. Canon, Inc.,* 432 F.Supp. 376 (C.D.Cal.1977). This argument must be rejected, since there is no basis for concluding that the word "found" must be given the same restrictive meaning in the context of the nation's tax laws. The antitrust laws are designed to provide a remedy for injuries resulting from business or commercial practices. If the complained of practices are conducted by the domestic subsidiary of a foreign corporation, there very well may be no reason to subject the parent to suit unless it has contributed directly to that conduct by employing the subsidiary as an "alter ego" or "agent." Enforcement of the tax laws, by contrast,

---

**7.** 26 U.S.C. § 7602 provides, in relevant part:
For the purpose of ascertaining the correctness of any return [or] determining the liability of any person for any internal revenue tax, ... the Secretary or his delegate is authorized—
(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers,

records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

**8.** This does not necessarily mean, however, that enforcement is appropriate in this case. For purposes of this motion to dismiss, the Court must accept as true the Government's allegations as to the relevance, necessity, and materiality of the documents requested. *See Data Disc, supra,* 557 F.2d at 1285. Furthermore, enforcement of the summonses requires considerations of international law that are not presented on this preliminary motion to dismiss for lack of personal jurisdiction. *See, e.g., SEC v. Banca Della Svizzera Italiana,* 92 F.R.D. 111 (S.D.N.Y.1981).

do not turn upon issues such as whether the parent exercised day-to-day management or control over its subsidiary. Instead, section 482 of the Internal Revenue Code may be invoked whenever two business organizations are "owned or controlled directly or indirectly by the same interests," regardless of whether one is considered an "agent" or "alter ego" of the other. Given the significantly different policy considerations underlying the tax code and the antitrust laws, the restrictive jurisdictional rules announced in decisions such as *Kramer Motors* and *O.S.C. Corp. v. Toshiba* have little persuasive value in this case.

### B. DUE PROCESS LIMITATIONS

Having concluded that sections 7402(b) and 7604(a) authorize jurisdiction over this case, it remains to be seen whether constitutional limitations are respected. Two types of tests are recognized: "general" jurisdiction, which permits a court to exercise its authority over a defendant conducting "continuous and systematic" activities in the forum even if the cause of action is unrelated to the defendant's forum activities; and "limited" jurisdiction, which applies only to claims arising out of or resulting from the defendant's forum-related activities. *See Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1287 (9th Cir.1977); *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 413 (9th Cir.1977). On this motion it is necessary to determine only whether the Government has satisfied its burden of making out a *prima facie* case for limited jurisdiction. The Court expresses no opinion on whether the more stringent test for general jurisdiction has been satisfied.

■ The initial inquiry required by *Data Disc* is whether the nonresident defendant has purposefully availed itself of the privilege of conducting activities in the forum. In *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980), the Supreme Court held that personal jurisdiction over a foreign corporation could not be established merely by the "fortuitous circumstance" that a product sold by it happened to reach the forum state. The Court was careful to distinguish, however, a situation where the foreign corporation *purposefully* avails itself of business opportunities in the forum, regardless of whether it acted directly or indirectly. As the Court stated:

> The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*Id.* at 297–98, 100 S.Ct. at 567–68.

■ Recent decisions, in the Ninth Circuit and elsewhere, emphasize that purposeful exploitation of the forum's market rather than the means through which this is carried out is the relevant fact. *See, e.g., Taubler v. Giraud,* 655 F.2d 991 (9th Cir. 1981); *Plant Food Co-op v. Wolfkill Feed & Fertilizer Corp.,* 633 F.2d 155 (9th Cir.1980); *Kaiser Stuhl, supra,* 647 F.2d 200 (D.C.Cir. 1981); *Oswalt v. Scripto, Inc.,* 616 F.2d 191 (5th Cir.1980); *Noel v. S.S. Kresge Co.,* 669 F.2d 1150 (6th Cir.1982); *Santiago v. BRS, Inc.,* 528 F.Supp. 755 (D.P.R.1981); *Cascade Steel Co. v. C. Itoh & Co. (America),* 499 F.Supp. 829 (D.Or.1980). The fact that Toyota Japan's products reach the United States market through a wholly-owned subsidiary, rather than directly from the parent corporation, is inconsequential for due process purposes. Instead, due process is satisfied so long as Toyota Japan knew and intended that its vehicles would be sold here, and it actively promoted those sales. *See Taubler, supra,* at 994. Though mere ownership of a domestic subsidiary may not automatically confer jurisdiction over the parent (*Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925); *but see Wells Fargo, supra,* 556 F.2d at 420 & n. 14), there is no obstacle to jurisdiction over the foreign parent if it uses its subsidiary as a marketing conduit. *See, e.g., Crucible, Inc. v. Stora Kopparbergs Bergslags AB,* 403 F.Supp. 9 (W.D.Pa. 1975); *Zenith Radio Corp. v. Matsushita Elec. Ind. Co.,* 402 F.Supp. 262 (E.D.Pa.

360

1975); *Hitt v. Nissan Motor Co.,* 399 F.Supp. 838 (S.D.Fla.1975); *Regie Nationale v. Superior Court,* 208 Cal.App.2d 702, 25 Cal.Rptr. 530 (1962). The Supreme Court's decision in *World-Wide Volkswagen* and the Ninth Circuit's adoption of that approach in *Taubler v. Giraud* indicate that Toyota U.S.A.'s status as a distinct corporate entity is no bar to this Court's jurisdiction over Toyota Japan.[9]

Personal jurisdiction is, in this case, limited only to claims that arise out of or result from the defendant's forum-related activities. *Data Disc,* 557 F.2d at 1287. This limit is respected here, as the IRS summons was issued in the course of an investigation into Toyota U.S.A.'s tax liability. The forum-related activity is the sale of Toyota Japan's products to United States consumers by Toyota U.S.A.[10] Ultimately, this investigation may directly affect Toyota Japan's profits from sales of its goods in the United States. The claim before the Court results directly from the forum-related activities giving rise to jurisdiction over Toyota Japan.

Finally, the assertion of personal jurisdiction over Toyota Japan is reasonable. This is not a case where the forum-related conduct results from negligent, rather than purposeful, activities, as in *Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1270–71 (9th Cir.1981), nor where the corporation is owned or controlled by an agency of a foreign sovereign, as in *Kramer Motors, supra,* 628 F.2d at 1178; *see also Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 315–16 n. 37 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). Furthermore, federalism limitations do not arise in this case, since the claim is brought by the United States under federal law. *See generally* Note, *Federalism, Due Process, and Minimum Contacts: World-Wide Volkswagen Corp. v. Woodson,* 80 Colum.L. Rev. 1341 (1980). In this case, Toyota Japan's purposeful forum-related activities make it reasonable to exercise jurisdiction over it without offending due process limitations.

## III. SUBJECT MATTER JURISDICTION

■ Subject matter jurisdiction is provided by 26 U.S.C. § 7402(a) and 28 U.S.C. § 1345. *See United States v. Hankins,* 581 F.2d 431, 438 n. 11 (5th Cir.1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979).

## IV. VENUE

■ Sections 7604(a) and 7402(b) define venue in addition to jurisdiction. *United States v. Hankins, supra,* 581 F.2d at 438 n. 11. As noted by Judge Wisdom in *Time, Inc. v. Manning,* 366 F.2d 690, 696 (5th Cir.1966), venue limitations are more concerned with convenience than power. Once the judicial power of the United States is established over Toyota Japan, the Government must show that it has brought its enforcement petition in a convenient forum.

**9.** Although *O.S.C. Corp. v. Toshiba America, Inc., supra,* may appear to decide the constitutional issue, the better approach is to read that decision as one of statutory construction alone. At least one district court in this Circuit appears to have adopted that position, *see Cascade Steel, supra,* 499 F.Supp. at 834–37; *see also Ashwander v. TVA,* 297 U.S. 288, 346–48, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

Respondents also rely on *Kramer Motors, Ltd. v. British Leyland, Ltd., supra,* for the assertion that personal jurisdiction may not be exercised over Toyota Japan. The *Kramer Motors* court apparently did not consider a "stream of commerce" theory for personal jurisdiction; thus the decision cannot be interpreted as foreclosing that approach. In any event,

the Ninth Circuit's subsequent decisions in *Taubler* and *Plant Food* expressly embrace this theory, regardless of whether it was considered in *Kramer Motors.*

**10.** Aggregation of Toyota Japan's American contacts is proper in this case, in light of the broad jurisdictional authorization provided by 26 U.S.C. §§ 7402(b) and 7604(a). *Wells Fargo, supra,* 556 F.2d at 418. Even if an aggregation theory is not applied, it should be noted that Toyota Japan enjoys significant benefits from sales in California. Moreover, virtually all sales of Toyota Japan's products in the United States are facilitated through Toyota U.S.A., which is headquartered in the Central District of California.

In this case, the location of Toyota Japan's wholly-owned subsidiary here makes the Central District of California an especially convenient forum for this action to be heard. Without expressing any opinion on whether venue might be properly laid in any other judicial districts, I conclude that venue is proper under sections 7402(b) and 7604(a) in this case.

## V. SERVICE OF PROCESS

The enforcement petition was personally served on Isao Makino, Senior Director of Toyota Japan and President of Toyota U.S.A., at the business offices of Toyota U.S.A. on February 9, 1983. Though respondent acknowledges receiving actual notice of this action, it contends that service was not made by "appropriate process" as required by sections 7402(b) and 7604(a).

In determining whether this mode of service is appropriate, a central question is whether it provided actual notice to the respondent. *See Hanna v. Plumer*, 380 U.S. 460, 462–63 n. 1, 85 S.Ct. 1136, 1139–40 n. 1, 14 L.Ed.2d 8 (1965); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The Court must look also to the Federal Rules of Civil Procedure, which are generally referred to in IRS enforcement actions when no procedure is specified by statute. *See, e.g., United States v. Roundtree*, 420 F.2d 845, 851 (5th Cir.1969). Rule 4(d)(3) provides that service may be made on a foreign corporation by delivering process to an "officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. . . ." In this case, Toyota U.S.A. is the managing agent of Toyota Japan, as it has full marketing responsibility for sales of Toyota Japan's products in the United States. "In general, the managing agent for purposes of service of process is that person or entity in charge of those activities within the state which justify the exercise of personal jurisdiction over the defendant." *Koupetoris v. Konkar Intrepid Corp.*, 402 F.Supp. 951 (S.D.N.Y. 1975), *aff'd*, 535 F.2d 1392 (2d Cir.1976); *see*

*also Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 424 n. 19 (9th Cir.1977); *Tokyo Boeki (U.S.A.), Inc. v. S.S. Navarino*, 324 F.Supp. 361 (S.D.N.Y.1971). Accordingly, the enforcement petition was validly served on Toyota Japan through its marketing subsidiary.