UNITED STATES of America,
Plaintiff–Appellee,

v.

Toribio SOTO–ORNELAS,
Defendant–Appellant.

No. 87–2442.

United States Court of Appeals,
Tenth Circuit.

Dec. 23, 1988.

William P. Earley, Asst. Federal Public Defender, Oklahoma City, Okl., for defendant-appellant.

Robert E. Mydans, Asst. U.S. Atty. (William S. Price, U.S. Atty., and Ted A. Richardson, Asst. U.S. Atty., on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before BALDOCK, SETH, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

There are two issues raised in this appeal: (1) whether the district court erred in denying the motion of defendant-appellant, Toribio Soto–Ornelas, to suppress all evidence obtained following an allegedly unconstitutional interrogation and arrest; and (2) whether defendant's conviction for false representation and use of a Social Security number and false representation of United States citizenship violated his Fifth Amendment due process rights because it was inconsistent with the Immigration Reform and Control Act of 1986.

We conclude that the interrogation and arrest were lawful and that, in any event, none of the evidence introduced at defendant's trial was obtained as a result of the interrogation. Accordingly, the motion to suppress was properly denied. We also conclude that defendant's conviction was not inconsistent with the Immigration Reform and Control Act of 1986 and did not violate his Fifth Amendment right to due

process. Therefore, we affirm the judgment of the district court.

Defendant raises these issues by means of a direct appeal from his criminal conviction in the United States District Court for the Western District of Oklahoma. In that court, a jury found defendant guilty of false representation and use of a Social Security number and false representation of United States citizenship.

At trial, the government established the following facts. In May 1987, an insurance administrator, Cindy Marshall, contacted Franklin Bell, an agent with the Immigration and Naturalization Service (INS). She told him that she was suspicious that a worker's compensation claimant who went by the name "Joshua Callahan" was an illegal alien. The INS sent a certified letter to the address given by Marshall asking Callahan to appear at the INS office. The INS never received a return receipt.

Bell subsequently went to the address that Marshall had provided and was informed by a neighbor that the family that had lived there had moved out a few weeks earlier. He also was informed that the family was "Spanish," that Eric Soto was the adult male, and that one of the preschool aged children was named Joshua Callahan.

Marshall contacted Bell again and advised him that the man claiming to be Callahan would be attending a worker's compensation hearing that day at the Worker's Compensation Court in Oklahoma City, Oklahoma. Bell attended the hearing, which was captioned as a claim by Joshua Callahan. During the hearing, the worker's compensation court asked the claimant if Joshua Callahan was his true name. The claimant, through an interpreter, told the court that his real name was Toribio Soto–Ornelas. At some point in the hearing, opposing counsel asked Soto–Ornelas about his Social Security number. Soto–Ornelas' counsel objected to the question, claiming that the answer might tend to incriminate his client.

After the hearing, and after the attorney who had represented Soto–Ornelas at the worker's compensation hearing had left, Bell approached Soto–Ornelas. Bell identified himself as an INS agent, and asked Soto–Ornelas what country he was a citizen of and if he had any documentation supporting his presence in the United States. Soto–Ornelas told Bell that he was a citizen of Mexico and that he did not have any documentation allowing him to be in the United States. After repeating the questions to Soto–Ornelas in a conference room and receiving the same answers, Bell placed him under arrest.[1] Shortly thereafter, the attorney who had represented Soto–Ornelas in the worker's compensation hearing returned and asserted that he represented Soto–Ornelas in immigration matters as well. Bell conducted no further questioning of Soto–Ornelas at that time.

Defendant's statements made during the initial interrogation were not introduced against him at trial. In fact, he was not charged with illegal immigration. Rather, he was charged only with illegal representation and use of a social security number and illegal representation of United States citizenship. Additionally, there was no finding below nor is there any indication in the record on appeal that any evidence introduced against defendant at the trial was acquired as a result of information obtained during the interrogation of defendant.

Before trial, defendant moved to suppress all evidence obtained during and after his arrest, claiming that Bell's interrogation violated his Sixth Amendment right to an attorney because it was not conducted in the presence of his worker's compensation attorney, that the interrogation was contrary to INS guidelines, and that his initial arrest was without probable cause. Defendant also moved to dismiss his indictment, claiming that it violated his right to due process because it was unfairly inconsistent with the Immigration Reform and

---

1. Bell testified at trial that defendant probably considered himself custodialized when he went with Bell to the conference room.

Control Act of 1986. The district court denied both motions.

Defendant was convicted by jury of all counts and was sentenced to two years probation and a fifty dollar fine on each count. He appeals from that conviction and sentence.

## I.

### SUPPRESSION OF EVIDENCE

Defendant contends that all evidence obtained during and subsequent to his arrest should have been excluded as "fruit of the poisonous tree" under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In support of this contention, defendant argues that Bell's interrogation of him while his attorney was not present improperly circumvented his Sixth Amendment right to counsel and was contrary to INS guidelines. He claims that without the allegedly improper interrogation, Bell lacked probable cause to arrest him, and therefore all evidence obtained subsequent to the arrest should have been excluded.

■ The standard of review on an appeal of the denial of a motion to suppress evidence is that the reviewing court must accept the trial court's findings of fact unless clearly erroneous and must consider the evidence in the light most favorable to the government. *United States v. Smith*, 797 F.2d 836, 840 (10th Cir.1986); *United States v. Rios*, 611 F.2d 1335, 1344 (10th Cir.1979).

In challenging the interrogation, defendant relies primarily on *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). In that case, the Supreme Court held that:

> [K]nowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity. Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the ac-

cused's right to have counsel present in a confrontation between the accused and a state agent.

*Id.* at 176, 106 S.Ct. at 487. Defendant argues that Bell waited until defendant was separated from his attorney before interrogating him, thereby circumventing his right to have his attorney present.

■ In *Moulton*, the Court found that introduction of statements made by a defendant, *after he had been indicted*, to a codefendant who was a secret government informant was improper. In contrast, the defendant here had not been placed in custody and no formal charges or proceedings had been initiated against him when he was questioned by Bell. The Sixth Amendment right to counsel attaches only "after the initiation of formal charges." *Moran v. Burbine*, 475 U.S. 412, 431, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986). Therefore, the interrogation in the instant case could not have violated defendant's Sixth Amendment right to counsel because that right had not yet attached.

Defendant also argues that Bell's interrogation was unlawful because Bell did not comply with INS guidelines. INS agents are authorized by federal statute "to interrogate any alien or person believed to be an alien as to his right to be or remain in the United States." 8 U.S.C. § 1357(a)(1). The government concedes that INS policy guidelines provide that an INS agent generally should notify attorneys of an intention to interview their clients. In this case, the government relies on an exception to that general policy which provides that the attorney need not be notified where the interview is unrelated to the matter for which the attorney represents the individual. In support of this exception, Bell testified that he believed that defendant's attorney at the worker's compensation hearing did not represent defendant on immigration matters. Also, at oral argument before this Court, defendant's counsel conceded that there is nothing in the record showing that defendant had, in fact, engaged any attorney for immigration purposes at the time of this interrogation.

■ However, we need not decide whether the exception to the policy guideline was met. Even if Bell's failure to contact defendant's attorney was improper under INS guidelines, that would not require exclusion of evidence. The INS guidelines are not statutory or constitutional requirements; rather, they are internal administrative policies. Although we agree with defendant and the district court that it would have been better practice to ask defendant's attorney about the scope of his representation before questioning defendant, we do not believe that Bell acted unlawfully under the facts of this case in directly approaching the defendant.[2]

■ Moreover, even if the initial interrogation were unlawful, there was no improper "fruit" to be excluded. Defendant was not prosecuted for being an illegal alien and nothing stated by him during the interrogation was used against him at trial. Rather, evidence of his false social security number, false name, etc. was developed independently by the INS.

■ Defendant has made no showing that any evidence used against him at trial was connected with the initial arrest or interrogation. Instead, defendant contends that but for the arrest, the INS would not have conducted its investigation. This argument is belied by the fact that the INS already was investigating defendant before the arrest. Furthermore, as the Supreme Court stated in *Wong Sun*, the test for exclusion of "fruit of the poisonous tree" is not a "but for" test:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distin-

guishable to be purged of the primary taint."

*Wong Sun*, 371 U.S. at 487–88, 83 S.Ct. at 417 (quoting Maguire, *Evidence of Guilt*, 221 (1959)). *See also United States v. Carson*, 793 F.2d 1141, 1148 (10th Cir.) ("[E]vidence, the knowledge of which is obtained as a result of prior police illegality, is admissible so long as ... it has been subsequently obtained by means sufficiently distinguishable from the prior illegality to purge the evidence of the taint"), *cert. denied*, 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed. 2d 289 (1986).

The INS has demonstrated, and defendant has not rebutted, that the evidence actually used to convict defendant was obtained by means that were "sufficiently distinguishable" from the initial interrogation and arrest. Therefore, there is no basis for suppressing the evidence.

## II.

## DUE PROCESS

■ Defendant raises a novel constitutional argument—that his conviction violated his right to due process because it was inconsistent with the grant of amnesty in the Immigration Control and Reform Act of 1986.[3] Defendant contends that the indictment was "simply unfair" because it covered offenses that are part of the "realities" associated with being an illegal alien, such as using false names and Social Security numbers. Our standard of review for this issue of law is *de novo*. *See In re Ruti–Sweetwater, Inc.*, 836 F.2d 1263, 1266 (10th Cir.1988); *In re Tri–State Equipment, Inc.*, 792 F.2d 967, 970 (10th Cir. 1986).

After careful consideration of defendant's argument, we conclude that it borders on being frivolous. We find that it has no support in either the language of the Act or its legislative history. Therefore, we

---

**2.** Defendant also argues that if the interrogation was improper, his arrest was illegal because, without defendant's answers to Bell's questions, Bell lacked probable cause to arrest him. Because we have determined that the interrogation was not improper, we need not reach this issue.

**3.** We note that there is no indication in the record that defendant ever applied for amnesty under the Act.

agree with the district court's analysis of this issue. As that court concluded, "the Act was not intended to bestow amnesty to aliens for those unlawful acts committed during their undocumented residency, despite the fact that such acts arose from, and were associated with, employment." (July 16, 1987 Order at 3.) Rather, recognizing that the United States has a "large undocumented alien population living and working within its borders," Congress sought to legalize "the status of aliens who have been present in the United States for several years." H.Rep. No. 99–682(I), 1986 U.S.Code Cong. & Ad.News at 5649, 5653. There is no mention in the Act or in its legislative history of granting amnesty for anything other than the status of being an illegal alien. In fact, the Act specifically excludes from amnesty aliens who have been convicted of a felony or three or more misdemeanors. 8 U.S.C. § 1255a(a)(4)(B).[4] Furthermore, the legislative history includes a statement by the House Committee on the Judiciary that amnesty was intended only for those aliens who "have abided by the laws of this country." 1986 U.S.Code Cong. & Ad.News at 5675. Defendant has not shown any legislative history to the contrary.[5]

In conclusion, we find no constitutional violation in convicting an illegal alien of crimes that he committed while illegally in the United States, even though those crimes are fairly common crimes committed in the act of concealing illegal status.

AFFIRMED.

---

**4.** The Act sets forth four requirements for amnesty: (1) timely application; (2) continuous unlawful residence in the United States since 1982; (3) continuous physical presence since November 6, 1986; and (4) admissibility as an immigrant. Under the fourth requirement, the alien must establish, among other things, that he "has not been convicted of any felony or of three or more misdemeanors committed in the United States." 8 U.S.C. § 1255a(a).

**5.** Defendant relies on other statements by the House Committee on the Judiciary. For example, the Committee stated that the "legalization program should be implemented in a liberal and generous fashion." 1986 U.S.Code Cong. & Ad.News at 5676. We do not believe that this language supports defendant's conclusion that Congress intended to grant amnesty for crimes other than illegal entry or residence in this country.