**Stuart MEYERS, Plaintiff,**

v.

**ASICS CORP., Defendant.**

**No. CV89-0331-HLH (Kx).**

United States District Court,
C.D. California.

April 24, 1989.

Mark Garscia, Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst, Los Angeles, Cal., for plaintiff.

Steven M. Perry, Munger, Tolles & Olson, Los Angeles, Cal., David G. Conlin, Dike, Bronstein, Roberts & Cushman, Boston, Mass., for defendant.

ORDER DENYING MOTION TO DISMISS OR QUASH SERVICE; ORDER RE MDL REVIEW (MDL 777)

HUPP, District Judge.

BACKGROUND

This patent infringement action was filed by Stuart Meyers against ASICS Corp. (AS-

ICS), a Japanese manufacturer of sports shoes, on December 9, 1989. It came to this court as a low number transfer due to its relation to the case of *Meyers v. ASICS Tiger Corp.* (Tiger) CV 88–3071. In that case, the plaintiff sued the American subsidiary of ASICS, alleging that the ASICS shoes which Tiger distributes in this country infringe the Meyers patent for a special sole and insole. Tiger is an independent American corporation wholly owned by AS-ICS. The case against Tiger was originally filed in this court but was transferred pursuant to the MDL procedure to the Southern District of New York for consolidated pretrial proceedings.

Meyers has already attempted to sue the parent, ASICS, in the Southern District of New York as part of the MDL litigation; however, Judge Richard Owen, who is handling the Meyers patent MDL matter, dismissed the case on the grounds that there was no personal jurisdiction under New York's long arm statute. Meyers refiled the action in the Central District, alleging that ASICS has the required minimum contacts with California. ASICS has again moved for dismissal of the case on the grounds that the Court lacks personal jurisdiction. ASICS also claims that service was performed by registered mail on the defendant in Japan in contravention of the Hague Convention.

FACTS

According to the ASICS annual report, the parent set up Tiger "in the suburbs of Los Angeles as (its) major U.S. sales distribution center." The parent described the creation of the subsidiary as a move which "was certain to strengthen the Company's operations in the United States considerably." The shoes are sold by ASICS to Tiger on an FOB Japan, Korea, or Taiwan basis, with title being transferred to the American subsidiary prior to the time they are transported to the United States. The parent does not sell shoes directly to consumers in this state. However, after the goods are sold to Tiger, they are shipped to California, and later distributed to the rest of the United States.[1]

There is a substantial overlap between the board of directors and executive offices of the two companies (all of the directors of Tiger are ASICS officials, as are the president and other executive officers). However it has already been determined by Judge Owen that Tiger is independent from ASICS, and is not an alter ego of the parent.

ASICS estimates that California residents ultimately purchase about 4% of the sports shoes ASICS sells. ASICS total world shoe sales amounted to about $380 million (including sales of all subsidiaries). Hence, approximately $15 million worth of ASICS shoes were sold in the state.

ASICS has a "liaison" office in California which gathers information on market trends in the United States and on competitive developments in the industry. It also performs communications services to assist ASICS in its dealings with Tiger. Finally, ASICS provides funds for and participates in trade shows in the United States with Tiger, and it engages in some other limited marketing assistance.

ANALYSIS

The motion by ASICS makes two separate claims: 1) that this Court lacks personal jurisdiction over ASICS and 2) that service should be quashed.

*I.  Personal jurisdiction*

The Ninth Circuit very recently held that "where a trial court's ruling (on personal jurisdiction) is based solely upon a review of affidavits and discovery materials, dis-

---

**1.** In its motion to dismiss in New York, ASICS submitted an affidavit of Tokio Sakaguchi indicating that after the ASICS shoes are sold to Tiger they are shipped to California. *See* Plaintiff's Ex. 2 at para. 12. In its Supplemental Memorandum, ASICS contests the conclusion that all of the product distributed in the United States is first shipped to California. It cites evidence in the record showing that Tiger main- tains warehouses in both California and Georgia. *See* Williams Decla., Ex. 2 at 115. Even if it is assumed that the shoes are directly shipped to both of the warehouses from Asia, the earlier statement by Sakaguchi still provides sufficient evidence for the proposition that all or most of the product is shipped into California. At this stage of the proceeding, that is enough.

missal is appropriate only if the plaintiff fails to make a prima facie showing ..." *See Shute v. Carnival Cruise Lines*, 863 F.2d 1437 (9th Cir.1988). Thus, the fact that Meyers may have had some discovery already related to the New York action does not affect the standard of proof.

The federal courts, of course, apply the long arm statutes of the states in which they sit, with California assuming the maximum jurisdiction allowed by the Fourteenth Amendment through Cal.Code of Civ.Pro. § 410.10. *Eg. Butcher's Union Local No. 498 v. SDC Investments, Inc.*, 788 F.2d 535 (9th Cir.1986) Personal jurisdiction over ASICS may be established in one of two forms—general or specific. Where contacts with are substantial, systematic, or continuous, a party may be subject to suit in a forum on any topic, even if the suit is unrelated to the activities which it conducts in the forum. Even without general jurisdiction, a court may have specific jurisdiction over a party where its activities in the forum relate to the injury sued upon.

In this case, the plaintiff asserts that although Tiger is a separate legal entity and ASICS does not directly market shoes to California consumers, the parent is nevertheless subject to suit here as a result of its manufacture and distribution through Tiger of infringing product. Meyers claims that both general and specific jurisdiction exist as to ASICS in this forum; however, his primary claim focuses on the specific test.

The Ninth Circuit has listed the following considerations as relevant in determining if minimum specific jurisdiction has been shown: 1) the nonresident must do some act or consummate some transaction with the forum by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; 2) the claims must arise out of or result from its forum related activities; and 3) the exercise of jurisdiction must be reasonable. *Eg. Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir.1986).

## 1. Effect of decision in Southern District of New York

■ The New York District Judge dismissed virtually the same action in that forum, holding that there had not been a sufficient showing that ASICS was covered by New York's long arm statute. ASICS is correct that res judicata is applied to a prior decision which finds that personal jurisdiction does not exist. *See Kendall v. Overseas Development Corp.*, 700 F.2d 536 (9th Cir.1983).

The New York District Court found that ASICS was not authorized to do business in New York, nor was it present in the state. It found that the only direct contact with New York was the parent's activity related to trade shows in the state, and it concluded that these activities were not enough to satisfy New York's statutes (citing *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757 (2nd Cir.1983)).

Additionally, the court found that Tiger was not a mere department of the parent and all of the corporate formalities had been observed, with Tiger maintaining independent decision making authority; thus, jurisdiction could not be premised on an alter ego theory. Furthermore, the New York District Court found that Tiger's activities in New York "were not so extensive or significant enough to ASICS" to find that ASICS was present in the state through agency principles under New York law. Finally, the court found that the New York statute which allows jurisdiction over torts committed outside the state causing harm in the state where the defendant's total commercial activity is so substantial that injury in New York is foreseeable, did not apply. That was the case because the "plaintiff's residence does not determine the place of injury in tort cases."

The Court accepts the findings as establishing facts under the doctrine of collateral estoppel; in addition, if the facts as to the California connections were the same as in New York, the identical result would follow in the Ninth Circuit under *Cascade Corp. v. Hiab–Foco AB*, 619 F.2d 36 (9th Cir.1980) (discussed *infra*).

There are, however, additional facts which lead to a different result in California. The New York District Court's holding does not control the decision in the case at hand for two reasons: 1) the New York District Judge relied on state statutes to dismiss the action, not the Constitution; and 2) the decision in the earlier proceeding, of course, focused on New York contacts and not on those alleged to exist in California. In sum, the only part of the New York holding which appears to be applicable to the present motion is the finding that Tiger is an independent company which controls its own decision making structure and observes all corporate formalities, and thus, there is no alter ego liability.

### 2. Purposeful availment

#### A. Stream of Commerce/Marketing Conduit

■ Although it is clear that a nonresident parent is not subject to process solely based on the actions of an independent subsidiary, a parent may still be responsible for its own actions directed at a forum. This Circuit has long recognized that a company which injects its products into a forum is subject to jurisdiction. *Eg. Duple Motor Bodies, Ltd. v. Hollingsworth*, 417 F.2d 231, 235 (9th Cir.1969); *Taubler v. Giraud*, 655 F.2d 991 (9th Cir.1981); *Plant Food Co-op v. Wolfkill Feed & Fertilizer Corp.*, 633 F.2d 155 (9th Cir.1980).

In *United States v. Toyota Motor Corp.*, 561 F.Supp. 354 (C.D.Cal.1983) (Hall, J.), a court in this district considered a fact situation almost identical to the one in the instant case. Toyota had a local subsidiary to which it shipped cars on an FOB Japan basis. All advertising and marketing was handled by the United States subsidiary, which was the exclusive agent for the Japanese car company. *Toyota, supra*, at 356. The two companies were not alter egos, though there was significant overlap between the personnel of the parent and subsidiary. *Id.* Finally, it was determined that Toyota derived a substantial benefit from the subsidiary's U.S. sales. The court noted that "indubitably the management ... of Toyota of Japan knew and intended that the automobiles manufactured by their corporation would be purchased by consumers in the United States." *Id.*

The *Toyota* court noted "(t)he fact that Toyota Japan's products reach the United States market through a wholly owned subsidiary, rather than directly from the parent corporation is inconsequential for due process purposes ... Though mere ownership of a domestic subsidiary may not automatically confer jurisdiction over the parent ..., there is no obstacle to jurisdiction over the foreign parent if it uses its subsidiary as a marketing conduit." *Id.* at 359.[2]

Thus, as here, the wholly owned subsidiary was a mere part of an overall marketing plan, which purposely availed itself of the privilege of doing business in California. ASICS' relationship with its subsidiary is almost precisely the same as was Toyota's with its American marketing arm. The evidence submitted amply supports the conclusion that that Tiger was established as part of ASICS overall marketing plan; indeed, ASICS' annual reports states that this was its purpose in establishing Tiger in the United States. ASICS has placed the sales structures in California and must have intended for the product to come to the state. There is evidence that all or

---

**2.** Contrary to ASICS' assertions, the due process holding in *Toyota* is precisely on point, and the defendant is incorrect in analyzing the case's holding as being limited to tax matters. In support of that line of reasoning, ASICS has cited language in *Toyota* which was directed to the question of whether the tax code supplied a statutory basis for personal jurisdiction. *See Toyota, supra*, at 358 (refusing to interpret word "found" as used in the tax code in the same limited way it had been in the antitrust area). However, Judge Hall was merely noting that in all personal jurisdiction questions both statutory and Constitutional limits may apply. The discussion regarding the interpretation of the word "found" was clearly limited to the statutory issue. Hence, that section of the opinion does not apply to the case at hand.

The *due process* holding in *Toyota*, on the other hand, is exactly on point. Judge Hall relied upon general Constitutional principles in reaching the decision, and thus, it is apparent that the holding is not limited to actions by the United States to collect taxes. *Toyota, supra*, at 359–360.

most of the shoes sold in the United States are first shipped by ASICS to Tiger in California, although sales are done on an FOB Asia basis.[3] The record illustrates that millions of dollars worth of ASICS' shoes are directly shipped into California, to a marketing subsidiary which ASICS purposefully established in California.

ASICS agrees that it maintains a liaison office in California in order to monitor trends. A reasonable inference from the presence of that office in California is that ASICS observes trends in this state to thereby serve the market. *See World–Wide Volkswagen Corp. v. Woodsen*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (if sale of product is not isolated occurrence, but arises from the efforts of the distributor to serve, directly or indirectly, the market . . . , it is not unreasonable to subject it to suit . . .)

The cases that defendant cites for the proposition that a parent is not liable for the acts of its independent subsidiary barring an alter ego finding are inapposite. *See* Motion pp. 11–12, citing *Cascade Corp. v. Hiab–Foco AB*, 619 F.2d 36 (9th Cir. 1980); *O.S.C. Corporation v. Toshiba America*, 491 F.2d 1064 (9th Cir.1974).[4] In those cases the parent did not send its product to the forum state directly, as is the case at hand.

Rather, the parent in *Cascade* had sent product to a Delaware subsidiary which

had later sold it to independent firms which had then sent it to Oregon, the forum state. This is very much like the situation Judge Owen considered in the motion to dismiss the action from the New York forum. In *O.S.C.*, the Circuit specifically noted that there had been no showing that the foreign parent had sent its goods to the subsidiary by way of the forum state, even though the court had specifically asked the plaintiff if that was the case. The opinion in *O.S.C.* distinguishes cases where the foreign parent actually sends product to the forum. Thus, the position of the forums in *O.S.C.* and *Cascade* was analogous to that of New York in the case at hand: the goods arrived in that state through the actions of the independent subsidiary, not the parent. Here, the situation is reversed: the shoes were sent to California by ASICS itself.

The defendant also claims the Supreme Court has held that a party may not be subject to suit merely because it puts its products in the stream of commerce, and the goods happen to appear in the jurisdiction. *See Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). At oral argument, ASICS suggested that the holding in *Toyota* may have been eclipsed by the Supreme Court's ruling in *Asahi;* however, the Court rejects that line of reasoning.

In *Asahi*, a Japanese company had sold tire valve stems to an independent Chinese

---

**3.** The defendant makes much of the fact that the sales in this case were made FOB Asia. However, that fact in no way distinguishes this case from the holding in *Toyota*, where sales were also made on an FOB Japan basis. Additionally, the Ninth and other Circuits have held that the fact that a manufacturer sells his product FOB a foreign country does not control for purposes of jurisdiction. *See Taubler v. Giraud*, 655 F.2d 991, 995 (9th Cir.1981) (while FOB term may be relevant in the case of an isolated sale in California, it loses significance in the face of the injury alleged, which occurred independently of the technicality of where risk or title passed); *Benitez–Allende v. Alcan Aluminio do Brasil*, 857 F.2d 26, 30 (1st Cir.1988).

**4.** In its Supplemental Memorandum, ASICS cites several additional alter ego cases: *Kramer Motors Ltd. v. British Leyland, Ltd.*, 628 F.2d 1175 (9th Cir.), cert. denied 449 U.S. 1062, 101 S.Ct. 785, 66 L.Ed.2d 604 (1980); *Ryder Truck Rental, Inc. v. Acton Foodservices Corp.*, 554 F.Supp. 277 (C.D.Cal.1983); *Yamaha Interna-*

*tional Corp. v. ABC International Traders, Inc.*, 1988–1 Trade Cases § 68.089, 1988 WL 144747 (C.D.Cal.1988). However, these cases do not alter the conclusion that the exercise of jurisdiction in this case is proper. The Court does not base its holding on an alter ego theory. As noted above, it fully accepts the findings of Judge Owen that Tiger and ASICS have observed all corporate formalities, and that Tiger is not a mere instrumentality of the parent.

Instead, the Court relies upon the actions of the parent itself (its overall marketing scheme and the importation of its products into the forum) in finding that there is jurisdiction. This holding does not imply that merely setting up an independent subsidiary in the state would suffice to create the necessary minimum contacts with the forum. It is the shipment of product by the Japanese parent into the state coupled with an apparent intent by ASICS to serve the market which establishes jurisdiction.

firm, which in turn sold them to California customers. A California resident was injured as a result of the stems' failure, and sued the Chinese firm, which sought indemnification from Asahi. The underlying tort suit was settled, leaving only the contribution action pending.

The Court issued three separate opinions. All of the Justices agreed that to exercise jurisdiction in this case was not reasonable because of the small interest California had in deciding the dispute between two foreign firms merely arguing over rights of contribution, and the hardships created by California jurisdiction in the case. *See Asahi,* 480 U.S. 102 at 112–117, 107 S.Ct. 1026 at 1033–1035, 94 L.Ed.2d 92, at 105–107.

The Court also considered whether there were the minimum contacts necessary to establish jurisdiction. On that point the Court was divided. Four Justices (Brennan, Marshall, White, and Blackmun) wrote that "(a)s long as a participant in the process is aware that the final product is being marketed in the forum state, the possibility of a lawsuit there cannot come as a surprise." *Id.* 480 U.S. at 117, 107 S.Ct. at 1035, 94 L.Ed.2d at 107.

Four other Justices (O'Connor, Rehnquist, Powell, and Scalia) suggested that in addition to placing an article in the stream of commerce, a defendant must also indicate an intent or purpose to serve the market: "for example, designing the product for the market in the forum state, advertising in the forum state, establishing channels for providing regular advice to customers in the forum state, or marketing the product through a distributor who has agreed to serve as sales agent in the forum

state." *Id.* 480 U.S. at 112, 107 S.Ct. at 1033, 94 L.Ed.2d at 104.

No matter which test from *Asahi* is used, ASICS has purposefully availed itself of the protection of this jurisdiction. Under the standards used by Justice Brenan, minimum contacts could easily be established in this case. Millions of dollars worth of ASICS shoes (some of which are alleged to infringe the patent) are ultimately sold to California residents each year. Those products were deliberately put into the stream of commerce; hence, ASICS would be present in the state.

Even under Justice O'Connor's test, an affirmative act has occurred. ASICS' products were intentionally shipped to California—unlike the situation in *Asahi* where the Japanese company had no control over the fact that some of its product found its way into the state. The presence of the marketing liaison office in the state at least suggests that ASICS designs its products for the California market. And, of course, ASICS markets the product through a distributor which has not only agreed to serve the market, but which was created by ASICS for that purpose and is a wholly owned subsidiary managed by ASICS officers.

### 3. Arising from contacts

The Ninth Circuit has taken a liberal approach in interpreting whether a cause of action arises from the contacts of a defendant. *Shute, supra,* at 1442–1445. Indeed, the Circuit appears to have adopted a "but for" test. *Id.* That being the case, the second prong of the limited jurisdiction test is satisfied: the U.S. infringement would not have occurred but for the sales of ASICS and its activities related to those sales.[5]

---

**5.** ASICS asserts that the "but for" test announced in *Shute* is designed to apply only to products liability actions and it cites language in the case to the effect that "courts apply the but for test *in this* type of situation" in reaching that conclusion. The problem with this argument is that one of the two cases the court in *Shute* was referring to in that passage was not a products liability case, but a sex discrimination claim. *Shute, supra,* at 1443. Thus, at the very least, *Shute* implies that the test controls tort actions like this one.

There is no evidence that the Circuit intended to set up a separate Constitutional test for per-

sonal injury actions from that used in commercial cases to determine whether a cause of action arises from forum contacts. The Ninth Circuit noted in *Shute* that the "reasonableness" test, not the "arising from" test, was designed to prevent a party from being forced to defend an action where his contacts are too attenuated. Still, even if a more restrictive test than the "but for" standard were to be applied, the suit in this case would still arise out of ASICS' contacts. It is the plaintiff's position that the subsidiary was set up to sell shoes that infringe upon the Meyers patent. If that is correct (as is assumed for the purpose of this motion), then it is hard to

### 4. Reasonableness

■ As to the reasonableness requirement, it is assumed where there are minimum contacts, and the defendant must present a compelling case to rebut it. *Id.* Seven factors are used to consider the reasonableness of jurisdiction: 1) the extent of purposeful injection; 2) the burden on the defendant to defend the suit; 3) the extent of the conflict with the sovereignty of defendant's state; 4) the forum state's interest in the dispute; 5) the most efficient forum for resolution of the matter; 6) the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum. *Id.*

Unlike the situation in *Asahi*, those factors do not suggest that jurisdiction is unreasonable. While it is true that the fact that ASICS is a foreign firm will increase its burden of defending this action, the Court does not view that factor as being dispositive. This suit involves only alleged infringement in the United States, not Japan.

California is apparently the only state with which ASICS has sufficient contacts to establish jurisdiction. To hold that jurisdiction were unreasonable here would be to find that Meyers had no forum in which to present his claims. Even if Meyers is not a California resident (as pointed out by ASICS), surely the state has an interest in preventing patent infringement from occurring within its borders. There is, of course, also the federal interest in seeing that the patent laws are enforced.

ASICS suggests that Tiger has sufficient assets to pay any judgment arising from this suit. However, there is no evidence proving that that is the case. Considering all of the factors, the Court finds that ASICS has not met its burden in establishing a compelling case that jurisdiction is unreasonable.

### II. Service by mail

■ Meyers apparently relied on registered mail to serve the defendant in Japan. ASICS attacks that method of service as a violation of the Hague Convention which addresses the methods that may be used to serve foreign parties, and cites a California case which so held. *See Suzuki Motor Co. v. Superior Court,* 200 Cal.App. 3d 1476, 249 Cal.Rptr. 376 (1988). Both the United States and Japan are Convention signatories.

There appears to be broad disagreement over the requirements of the Convention as it applies to service. However, it seems that *Suzuki* goes against the weight of other federal and state authority. *Eg. Ackermann v. Levine,* 788 F.2d 830 (2nd Cir. 1986); *Newport Components v. NEC Home Electronics,* 671 F.Supp. 1525 (C.D. Cal.1987) (Tevrizian, J.); *Tamari v. Bache and Co.,* 431 F.Supp. 1226, 1228–9 (N.D.Ill. 1977), affd. 565 F.2d 1194 (7th Cir.1977), cert. denied 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978); *Shoei Kako Co. v. Superior Court,* 33 Cal.App.3d 808, 109 Cal. Rptr. 402 (1973).

The primary dispute over the impact of the Convention regards Articles 10 and 15 of the treaty. Article 10(a) allows judicial documents to be "sent" through the mails, while other more restrictive sections of the Convention deal with other means of service. Article 15 allows service by methods accepted in the country where service is to be performed. In *Newport,* a court in this district found that Article 10 allowed service by mail as long as there was evidence by way of a return receipt that delivery had been made. *Newport, supra,* at 1542 (purpose of section was to allow easier method of service than other ways listed in Convention as long as there is receipt of service). The same interpretation has been adopted by the Second Circuit in *Ackermann, supra,* at 839 ("send" meant serve for purposes of the Convention). The interpretation of the Convention is a matter of federal law, and this court adopts the holdings of the federal cases noted above. The weight of federal authority indicates that

---

imagine that the patent infringement action does not arise from the creation of a marketing arm in the forum.

service by mail is allowed under the Convention.

### III. MDL Transfer

The entire Meyers patent issue is currently being coordinated for pretrial purposes in the same New York district court which held that it lacked personal jurisdiction over the defendant. However, there is jurisdiction in the Central District; hence, the action may still be transferred to be considered as part of the MDL case. *See In re Agent Orange Products Liability Litigation,* 818 F.2d 145 (2nd Cir.1987) (transfers under Section 1407 (MDL cases) are not encumbered by considerations of in personam jurisdiction).

Accordingly, this case is to be referred to the MDL Panel for consideration as a "tag along" matter to the consolidated action before the Southern District of New York. *See* MDL Rule 12, 120 F.R.D. 251, 258 (1988). If the panel determines that the procedures there are too far advanced to add this case to the rest of the Meyers patent actions (as ASICS asserts is the case), then it may reject the reference. However, the Court will not make that assumption.

The Court additionally notes that when the Tiger case returns from the MDL forum, it will be consolidated with the ASICS matter. The same pretrial order will be used for both cases.

IT IS SO ORDERED.