955 F.2d 49
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ranulfo FELIX-VILLALOBOS and Sergio Lopez-Vigil,
Defendants-Appellants.
 Nos. 91-2128, 91-2132.
 United States Court of Appeals, Tenth Circuit.
 Feb. 13, 1992.
 
 1
 Before STEPHEN H. ANDERSON and EBEL, Circuit Judges, and SAFFELS, District Judge*.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 DALE E. SAFFELS, District Judge.
 
 
 4
 Defendant-appellants Ranulfo Felix-Villalobos ("defendant Villalobos") and Sergio Lopez-Vigil ("defendant Vigil") appeal the denial of their motions to suppress. Defendants challenge the district court's ruling by means of a direct appeal from their criminal convictions in the United States District Court for the District of New Mexico. Following the district court's denial of their motions to suppress, defendants entered conditional guilty pleas to charges of possession with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D) and 18 U.S.C. § 2.
 
 
 5
 On appeal, defendants contend that the district court erred in finding that physical evidence seized from their cars and statements obtained following their arrests were legally obtained. In support, defendants contend that their referral to the secondary inspection area at the permanent border checkpoint was an unlawful detention because the agents lacked "reasonable suspicion" based "upon articulable facts" and "rational inferences" necessary to prolong their interrogation as required by Terry v. Ohio, 392 U.S. 1, 21 (1968).
 
 
 6
 We conclude that the searches and seizures were lawful and that the resulting arrests, seizure of evidence and voluntary statements were lawfully obtained. Accordingly, the defendants' motions to suppress were properly denied and the judgment of the district court will be affirmed.
 
 
 7
 In reviewing a district court's denial of a motion to suppress, the reviewing court must accept the trial court's findings of fact unless they are clearly erroneous. United States v. Soto-Ornelas, 863 F.2d 1487, 1490 (10th Cir.1988). Further, the evidence must be considered in the light most favorable to the government. Id. (citing United States v. Smith, 797 F.2d 836, 840 (10th Cir.1986); United States v. Rios, 611 F.2d 1335, 1344 (10th Cir.1979)).
 
 I.
 Facts
 
 8
 The testimony elicited at the suppression hearing reveals that on January 22, 1991, at approximately 4:30 a.m. defendants were driving north on Interstate 25 approximately one to two miles south of a permanent United States Border Patrol checkpoint in Dona Ana County, New Mexico, near the Mexican border. Border Patrol Agent Mario Enrique LaCuesta ("Agent LaCuesta") spotted the two defendants in their cars as he was heading south on Interstate 25. According to Agent LaCuesta, the defendants appeared to be traveling together because the second car, a Ford Monarch driven by defendant Vigil followed approximately 40 feet behind the first car, a Ford Maverick driven by defendant Villalobos. Agent LaCuesta observed both cars signaling to enter a rest area frequently used as a "staging area" for smuggling illegal aliens. Agent LaCuesta testified that he noticed that the Monarch appeared to be riding low. Agent LaCuesta then lost sight of the vehicles as he drove to a point where he could turn his car around on Interstate 25. As Agent LaCuesta entered the rest area to investigate whether the two defendants were involved in any illegal smuggling activity, defendant Villalobos pulled out of the rest area. Agent LaCuesta had earlier observed the two cars parked side by side in the rest area parking lot; both had Colorado license tags. Agent LaCuesta pulled in front of defendant Vigil's car. Defendant Vigil then hesitated and appeared to try to wait out Agent LaCuesta's stop at the rest area. Agent LaCuesta testified that this behavior seemed suspicious given the time of day, 4:30 a.m., and the fact that defendant Vigil had his reverse lights on which indicated that he intended to exit the rest area, and yet, he waited when he saw the Agent LaCuesta's marked patrol car. After waiting between one to two minutes, defendant Vigil left, and Agent LaCuesta radioed ahead to Border Patrol Agent Michael K. Dalton ("Agent Dalton") to be on the watch for the two defendants.
 
 
 9
 Agent LaCuesta then drove to the permanent checkpoint. Upon his arrival, Agent Dalton was in the process of questioning defendant Villalobos at the primary inspection area. Agent LaCuesta approached Agent Dalton and asked him to inquire whether defendant Villalobos knew the driver of the second car. He answered no. Agent LaCuesta then inquired of defendant Vigil whether he knew defendant Villalobos. He responded affirmatively. Agent LaCuesta then approached defendant Villalobos to inquire once more whether the two defendants knew each other. Again, defendant Villalobos responded negatively.[1] Agent LaCuesta further testified that defendant Villalobos seemed visibly nervous when questioned for the second time about whether he knew defendant Vigil. Indeed, Agent LaCuesta testified that he had noted in his report that defendant Villalobos squirmed in his seat when questioned by Agent LaCuesta. Once defendant Villalobos denied knowing defendant Vigil for the second time, Agent LaCuesta told Agent Dalton to hold defendant Villalobos. Agent LaCuesta further testified that he had made the decision to further detain the two defendants for additional questioning. Both defendants were directed to a secondary inspection area.
 
 
 10
 At the secondary inspection area, defendant Vigil was asked for consent to search his car with a canine unit. He consented, and the dog alerted. Defendant Vigil was then arrested and read his Miranda rights. He signed a written waiver and agreed to make a statement. He told Agent LaCuesta that the car he was driving belonged to defendant Villalobos. Agent LaCuesta then asked defendant Villalobos for consent to search his car with a canine unit. He consented, and once more the dog alerted. Following Villalobos' arrest, he was Mirandized and like defendant Lopez, agreed to sign a written waiver and to make a statement. According to testimony by Agent LaCuesta, a total of five minutes had passed from the initial stop of the defendants at the primary checkpoint until the canine searches of their cars.
 
 
 11
 Subsequently, both cars were searched and a total of approximately 25 pounds of marijuana were recovered from the rocker panels of the two cars. Following the discovery of the marijuana, both defendants made statements which incriminated a third person, Genaro Ceniceros-Acosta ("Acosta"), who had previously passed through both the primary and secondary inspection areas without any contraband having been detected. According to the statements made by the defendants, Acosta was to pay them $600 for transporting the marijuana across the Mexican border to Denver, Colorado. The Border Patrol sent out a patrol and arrested Acosta. He is not a party to this appeal.
 
 II.
 Defendants' Detention
 
 12
 Routine stopping of motorists at permanent check points to ask questions designed to determine whether vehicles contain contraband does not violate the Fourth Amendment. United States v. Martinez-Fuerte, 428 U.S. 543, 566 (1976). Referral to a secondary inspection area does not require individualized suspicion. Id. at 563-64; United States v. Delgado 466 U.S. 210, 224 n. 6 (1984); United States v. Rubio-Rivera, 917 F.2d 1271, 1275 (10th Cir.1990). Moreover, "[b]order patrol agents may 'question individuals regarding suspicious circumstances, in addition to citizenship matters, when those individuals are stopped at a permanent checkpoint.' " United States v. Sanders, 937 F.2d 1495, 1499 (10th Cir.1991) (quoting United States v. Benitez, 899 F.2d 995, 998 (10th Cir.1990)). Thus, inquiry into areas beyond citizenship matters does not violate the Fourth Amendment as "no particularized reason" need exist to justify referring a motorist to a secondary inspection area so long as any further detention is based upon the individual's consent, or probable cause, or upon a valid investigative detention. Sanders, 937 F.2d at 1499. A valid investigative detention requires " 'reasonable suspicion' ... justified by a particularized and objective basis for suspecting the particular person of smuggling contraband." Id. (quoting United States v. Carreon, 872 F.2d 1436, 1440 (10th Cir.1989) (citation omitted)).
 
 
 13
 We conclude that reasonable suspicion existed in this case to detain the defendants for further questioning. As we have previously stated, border patrol agents may inquire about suspicious circumstances involving the driver and passengers. Sanders, 782 F.2d at 891. At the time defendants were referred to the secondary inspection area, the record reflects ample facts on which to base a finding of "reasonable suspicion." First, the two defendants appeared to be traveling together because of their close proximity, their Colorado license tags and the fact that both vehicles stopped at the rest area and parked side by side. Further, there was virtually no other traffic on the road at 4:30 a.m. other than the two cars of the defendants and the van driven by Acosta. These facts combined with the conflicting responses of the two defendants, defendant Villalobos' twice repeated denial that he knew defendant Vigil and defendant Villalobos' apparent nervousness when questioned by Agent LaCuesta, gave rise to an articulable basis for finding "reasonable suspicion" that some criminal activity was afoot and that further detention was warranted. Accordingly, we hold that the trial court's finding that reasonable suspicion existed for referring the two defendants to the secondary inspection area for further questioning is not clearly erroneous and is supported by the record.[2] Finally, because everything which occurred beyond this point was consensual and is not challenged on appeal except on the basis the statement and marijuana were obtained pursuant to an unlawful detention, we affirm the district court's denial of the defendants' motions to suppress their statements and the 25 pounds of marijuana.
 
 Conclusion
 
 14
 The trial court properly denied defendants' motions to suppress. The judgment of the trial court is affirmed.
 
 
 
 *
 The Honorable Dale E. Saffels, United States Senior District Judge for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The defendants argue that their inconsistent responses were the result of being asked two different questions, namely whether they knew each other and whether they were traveling together. Thus, defendants contend that the record does not support the trial court's finding that they gave inconsistent responses. This argument is unpersuasive because defendant Villalobos was asked by both Agent Dalton and Agent LaCuesta whether he knew or was traveling with defendant Lopez-Vigil. Therefore, the apparent inconsistency between his response and defendant Vigil's was confirmed by Agent LaCuesta's repeated inquiry. Accordingly, the trial court's finding that they gave inconsistent responses is supported by the record and is not clearly erroneous
 
 
 [2]
 In reaching this result, we affirm the trial court's finding that this case involves a permissible detention at a permanent border checkpoint and not a roving patrol